DANIEL R. MCNUTT (SBN 7815)
MATTHEW C. WOLF (SBN 10801)
MCNUTT LAW FIRM, P.C.
625 South Eighth Street
Las Vegas, Nevada 89101
Tel.: (702) 384-1170 / Fax.: (702) 384-5529
drm@mcnuttlawfirm.com
mcw@mcnuttlawfirm.com
*Attorneys for Defendant Scott Carney*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| INTERNATIONAL MARKETS LIVE, INC., a New York corporation; CHRISTOPHER TERRY, an individual;<br><br>Plaintiffs<br><br>vs.<br><br>ROBERT HALTERMAN, an individual; SCOTT CARNEY, an individual; ETHAN VANDERBUILT, an individual;<br><br>Defendants. | Case No.: 2:18-cv-00187-JAD-GWF<br><br>**DEFENDANT SCOTT CARNEY'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND TO DIMISS FOR FAILURE TO STATE A CLAIM, OR ALTERNATIVELY TO TRANSFER** |

Defendant Scott Carney ("Scott Carney" or "Carney") respectfully moves this Court to dismiss all claims against him under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue, or alternatively, move to transfer this action to the U.S. District Court for the Southern District of Florida in Miami under 28 U.S.C. § 1404, because the Southern District of Florida is the most convenient and appropriate forum to hear this dispute. Scott Carney further moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs failed to properly state a claim upon which relief can be granted.

## BACKGROUND

Defendant Scott Carney is wheelchair-bound and lives exclusively in Miami, Florida. *See* Decl. of Scott Carney, Ex. A ¶ 1. Carney has no meaningful connection to Las Vegas or Nevada. *Id.* ¶ 8. He does not own property in Nevada, does not have an office or an agent in Nevada, nor directs any actual business or advertising to Nevada. *Id.* ¶¶ 3-5, 7. Scott Carney does not have employees in any capacity who have ever traveled to Nevada for him. *Id.* ¶¶ 2, 5, 7-8. And none of the alleged conduct in the Amended Complaint took place in Nevada.

Despite Carney living in Florida, Plaintiffs initiated this lawsuit against him in the District of Nevada on February 18, 2018. Compl., ECF No. 2. After Carney moved to dismiss all claims, Plaintiffs filed an amended complaint dropping one of their claims, though leaving in their claims of Defamation Per Se, Trade Libel, Tortious Interference with Contractual Relations, and Tortious Interference with Prospective Economic Advantage. Am. Compl.

## I. Personal Jurisdiction

There is no basis for personal jurisdiction over Carney in Nevada. Carney does not live in Nevada, does not have a business in Nevada, and did not perform any of the alleged acts in, direct his conduct to, or target the State of Nevada. Ex. A ¶¶ 1-5, 7-8. Indeed, all of the conduct that Plaintiffs complain about is directed to International Markets Live, Inc., which is a New York entity that headquartered in New York. The sole link to Nevada is Plaintiff Christopher Terry. Under Nevada's long-arm statute, personal jurisdiction is unable to be exerted over Scott Carney under these circumstances. *See* Nev. Rev. Stat. § 14.065.

As an initial matter, "the plaintiff[s] must satisfy the requirements of Nevada's long-arm statute and show that jurisdiction [over Carney] does not offend principles of due process." *Fulbright & Jaworski v. Eighth Jud. Dist. Ct.*, 342 P.3d 997, 1001 (Nev. 2015); *see also Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1115 (D. Nev. 2013) ("[P]laintiff[s] ha[ve] the burden of establishing that a court has personal jurisdiction over a defendant."). Plaintiffs have not met their burden.

In order to have jurisdiction over this suit, the Court must have general or specific personal jurisdiction over Scott Carney. Neither are met, as Carney has had neither continuous and systematic contacts with Nevada, nor purposefully directed his activities to Nevada.

**A.    There Is No General Personal Jurisdiction Over Scott Carney Because He Does Not Have "Continuous And Systematic" Contacts With Nevada**

Plaintiffs failed to allege or show that Carney has "continuous and systematic" contacts with Nevada, thus fail to show there is general personal jurisdiction in Nevada. Besides this suit, Scott Carney has no significant contacts with Nevada. But even if he did have consequential contacts, Carney does not *maintain* any contacts with Nevada, let alone "continuous and systematic" contacts required for general jurisdiction. *See* Ex. A ¶¶ 2-8; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (courts cannot assert general jurisdiction over a defendant in the forum state unless the defendant's contacts are "continuous and systematic" within a state,); *and see Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) ("The standard for establishing general jurisdiction is fairly high, and requires that the defendant's contacts be of the sort that approximate physical presence.") (internal quotations and citations omitted)). General jurisdiction exists for individuals where they are domiciled. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted). "For general jurisdiction to exist, a defendant must engage in 'continuous and systematic general business contacts,' that 'approximate physical presence' in the forum." *Pfister*, 931 F. Supp. 2d at 1115 (*first quoting Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *and then quoting CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011)).

It is undisputed that Scott Carney is not domiciled in Nevada: he is a resident of, and domiciled in, Florida. Am. Compl. ¶ 3; *see also* Ex. A ¶ 1. Moreover, Carney does not have "continuous and systematic" contacts with Nevada. He has no businesses, offices, bank accounts, addresses, agents, employees, sales people, or real property in Nevada, and does not target or direct any consistent

activities or advertising towards the state. Ex. A ¶¶ 1, 2-4, 6-8; *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (defendant's contacts were "plainly insufficient" for general jurisdiction when defendant had contract "between $225 and $450 million" with a California corporation, had eleven contracts with California component suppliers, had representatives attend industry conferences, promote products, and met with suppliers in California, and advertised in California publications). Therefore, there is no basis for the exertion of general jurisdiction over Scott Carney.

**B.  Scott Carney Does Not Have Any Contacts With Nevada, And Therefore, This Court Does Not Have Specific Personal Jurisdiction Over Carney**

The Ninth Circuit has established a three-prong test for analyzing specific jurisdiction:

> (1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice . . . .

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011) (emphasis in original) (*quoting Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The party supporting the exercise of personal jurisdiction bears the burden of establishing the first two prongs, and, if satisfied, the burden shifts to the party resisting "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* at 1228 (citations omitted).

As previously stated, Scott Carney is domiciled solely in Florida and does not have a business in Nevada. Ex. A ¶¶ 1-2, 7. Carney's activities, as alleged or otherwise, do not relate to, do not target, nor are directed to Nevada. *Id.* ¶¶ 7-8. Notably, Plaintiffs fail to allege that Carney had any role in any

purported contracts, contract negotiations, or any other meaningful activities that were directed to Nevada. *See* Am. Compl. Not one of the three prongs of the specific personal jurisdiction analysis are met, let alone all three as required to find personal jurisdiction.

In tort cases, courts analyze the first prong of the specific jurisdiction test by "consider[ing] purposeful direction, also known as the 'effects test.'" *Bellagio, LLC v. Bellagio Car Wash & Express Lube*, 116 F. Supp. 3d 1166, 1180 (D. Nev. 2015) (*quoting Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)). Under the "effects test," "the defendant must have 1) committed an intentional act, 2) expressly aimed at the forum state, 3) causing harm that the defendant knows is likely to be suffered in the forum state." *Johnson v. Carmouche*, No. 2:15-cv-00597-JCM-PAL, 2015 WL 6757537, at *4 (D. Nev. Nov. 4, 2015) (*citing generally Calder v. Jones*, 458 U.S. 783 (1984)). "[T]he Supreme Court recently underscored the importance of a defendant's own, direct contacts with the forum state in the specific-jurisdiction analysis." *Bellagio*, 116 F. Supp. 3d at 1171 (*citing Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014)). Indeed, "[t]he connection must be of the defendant's creation, not of the plaintiff's." *Ariel Invs., LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) (*citing Walden*, 134 S. Ct. at 1122). "'[S]omething more' than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction, and that 'something more' means conduct expressly aimed at the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (citations omitted).

Scott Carney has no relevant connections with the State of Nevada, and none of the actions he is accused of committing were directed to Nevada. Ex. A ¶¶ 1-8; *see also Schwarzenegger*, 374 F.3d at 807 ("It may be true that [the defendant]'s intentional act eventually caused harm to [the plaintiff] in California, and [the defendant] may have known that [the plaintiff] lived in California[, b]ut this does not confer jurisdiction . . . ."). Even assuming, *arguendo*, that both (a) Plaintiffs' claims are actionable, *and* (b) Scott Carney directed his activities anywhere, Plaintiffs do not allege Carney committed any tortious activity in Nevada or directed any tortious conduct at Nevada. For instance, the accused

statements were not directed to Plaintiff Christopher Terry, the sole purported connection to Nevada. Indeed, the entirety of Plaintiffs' allegations asserting wrongdoing by Carney pertain to Plaintiff International Markets Live, Inc. ("IML"), a New York corporation headquartered in New York City. *See, e.g.*, Am. Compl. ¶ 14 ("CARNEY posts, 'IML Federal Investigation in FULL SWING!'"), ¶ 17 ("CARNEY posts, 'What's #HarmonicTakeover? The #iml Titanic!'"), ¶ 21 "CARNEY posts, 'The OFFICIAL Harmonic Trader Platform for MetaTrader4 (MT4) is coming in 10days!!! #HarmonicTakeover #imlwho?'"). Accordingly, Plaintiffs' own amended allegations show that if Carney directed any activities anywhere, any alleged "harm" would have been felt in and would be related to *New York City*, and not Nevada. *See Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010) ("Where a defendant's 'express aim was local,' the fact that it caused harm to the plaintiff in the forum state, even if the defendant knew that the plaintiff lived in the forum state, is insufficient to satisfy the effects test" and establish personal jurisdiction. (citation omitted)).

Where no facts demonstrate a defendant expressly aimed its conduct at the forum state, it is not necessary for a court to consider the final element of the "effects" test. *See Schwarzenegger*, 374 F.3d at 807 n.1 ("Because [the plaintiff] has failed to sustain his burden with respect to the second part of the . . . effects test, we need not, and do not, reach the third part of the test."). Beyond an allegation that Plaintiffs were harmed in Nevada, Plaintiffs' Amended Complaint is devoid of any allegations that some jurisdictionally significant contact actually exists between Scott Carney and Nevada. *See* Am. Compl.

The second specific personal jurisdictional prong analyzes "whether the 'plaintiff's claim . . . arises out of or relates to the ***defendant's*** forum-related activities'; the plaintiff 'must show that [it] would not have suffered an injury "but for" [the defendant's] forum-related conduct.'" *Evanston Ins. v. W. Cmty. Ins.*, 13 F. Supp. 3d 1064, 1069 (D. Nev. 2014) (alteration in original; emphasis added) (*quoting Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007)). Plaintiffs' Amended Complaint makes one allegation of Scott Carney linked with the State of Nevada—that Carney, over two years ago, once

"record[ed] online videos regarding Forex trading" from Christopher Terry's residence. However, that does not relate to *any* alleged wrongdoing nor injury alleged in the Amended Complaint. Because Plaintiffs have not shown that their claims "arise[] out of or relate[] to the ***defendant's*** forum-related activities,'" or that they "would not have suffered" their alleged injuries "'but for' [Carney]'s forum-related conduct," the inquiry ends here. *Menken*, 503 F.3d at 1058.

Even if Plaintiffs were able to satisfy *both* of the first two prongs, the exercise of jurisdiction would violate the third prong by not "comport[ing] with fair play and substantial justice" requirements of due process. *Schwarzenegger*, 374 F.3d at 802 ("If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state."). Plaintiffs have not alleged any contacts by Scott Carney with Nevada apart from conclusory statements that Plaintiffs felt alleged harm in Nevada and that Carney once purportedly "record[ed] online videos" in Nevada. Tellingly, Plaintiffs decline to plead any harm *directed to* Nevada. *See* Am. Compl.

The alleged Facebook posts were in no way directed towards Nevada, and consequently, these posts cannot serve to permit the exercise of personal jurisdiction over Carney. *See Rockwell Automation, Inc. v. Beckhoff Automation, LLC*, 23 F. Supp. 3d 1236, 1245 (D. Nev. 2014) ("[T]he fact that [a] website is viewable in Nevada (as elsewhere), or the fact that [a defendant] might have reason to suspect that its products . . . might end up in Nevada, is not enough to assert specific jurisdiction over [the defendant] in Nevada without evidence of Nevada-specific targeting."). Plaintiffs have not alleged, nor can they show, any tortious conduct by Scott Carney that was directed at Nevada. Nor can Plaintiffs show that Carney "purposefully established minimum contacts." *Consipio Holding, BV v. Carlberg*, 282 P.3d 751, 754-55 (Nev. 2012) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Accordingly, any exercise of personal jurisdiction over Carney here would fail to comport with traditional notions of "fair play and substantial justice." *Id.* at 754 (*quoting Burger King*, 471 U.S. at 476). Because this Court lacks personal jurisdiction over Scott Carney, the Amended Complaint should

be dismissed.

## II. District Of Nevada Is An Improper Venue So The Amended Complaint Should Be Dismissed

A complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) if it was not filed in a district where venue is proper.  Fed. R. Civ. P. 12(b)(3).  Venue is only proper in a judicial district: (1) where "any defendant resides, if all defendants are residents of the State in which the district is located," (2) where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or (3) where "any defendant is subject to the court's personal jurisdiction[,]" "if there is no district in which an action may otherwise be brought[.]"  28 U.S.C. § 1391(b).  The plaintiff bears the burden of proving that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979) ("Plaintiff had the burden of showing that venue was proper[] . . . .").

The District of Nevada is an improper venue because the Section 1391 criteria are not met as Scott Carney has no meaningful connection to Nevada, nor have Plaintiffs alleged any.  *First*, Carney does not reside in Nevada.  *See* 28 U.S.C. §1391(b)(1); *and see* Ex. A ¶ 1.  *Second*, no "substantial part of the events or omissions giving rise to the claim occurred" in this District.  28 U.S.C. § 1391(b)(2).  The causes of action all stem from alleged posts on Facebook or to the U.S. Commodities Futures Trading Commission ("CFTC"), none of which occurred in Nevada.  Am. Compl. ¶¶ 12-21.  Nor have Plaintiffs alleged that Carney conducts any commercial activities in Nevada, or maintains any property in Nevada.  Am. Compl.  Indeed, each of the Amended Complaint's substantive allegations of wrongdoing took place outside Nevada.  *Id.* ¶¶ 12-21; *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) ("[The plaintiff] fails to identify any conduct by [the defendant] that took place in [the forum state] . . . that adequately supports the availment concept.  Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum.").

*Finally*, and as discussed more fully above, venue under § 1391(b)(3) is also improper because the Court does not have personal jurisdiction over Scott Carney. *See also Medinah Mining, Inc. v. Amunategui*, 237 F. Supp. 2d 1132, 1135 (D. Nev. 2002) ("[M]erely posting information on an otherwise passive website" is insufficient for finding personal jurisdiction. (*citing Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997))).

For these reasons, and the reasons stated in the motion to dismiss for lack of personal jurisdiction, venue is improper in this District, and the action should be dismissed under 12(b)(3).

### III. In The Alternative, This Case Should Be Transferred To The Southern District Of Florida For Convenience

For each of the reasons stated above, the case should be dismissed. But if this Court disagrees and finds both personal jurisdiction and venue to be proper, Carney then requests that this case be transferred to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Convenience and fairness are determined based on various private and public interest factors. *See, e.g.*, *Operation: £Heroes, Ltd. v. Procter & Gamble Prods., Inc.*, 903 F. Supp. 2d 1106, 1111-12 (D. Nev. 2012) ("[A] motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." (*quoting Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000))). Here, the factors favor transfer.

#### A. Five Of The Eight Private And Public Interest Factors, Including The Most Important Factor, Weigh Strongly In Favor Of Transfer, Particularly Due To Scott Carney's Condition

The private and public interest factors assessing whether to transfer venues are:

> (1) [T]he location where the relevant [events occurred]; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to

compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*See Rockwell*, 23 F. Supp. 3d at 1247 (D. Nev. 2014) (*citing GNC Franchising*, 211 F.3d at 498-99). Each factor except Plaintiffs' choice of forum favors transfer, but, as detailed below, even this factor is entitled to minimal consideration when "the plaintiff's chosen venue lacks a significant connection to the activities alleged in the complaint." *Steven Cohen Prods., Ltd. v. Lucky Star, Inc.*, No.: 2:12-cv-01995-GMN-CWH, 2016 WL 1170985, at *5 (D. Nev. Mar. 23, 2016).

The most important factor, the convenience of the parties and its related sub-factor, the convenience of the witnesses, strongly favors Florida due to Scott Carney's disability and being wheelchair-bound, making transit to Nevada burdensome and inconvenient. *See Beverage Mgmt. Sys., Inc. v. Ott*, No. 3:12-CV-2126-SI, 2013 WL 1296083, at *9 (D. Or. Mar. 26, 2013) (applying the 9th Circuit's *GNC Franchising* factors and stating that "[c]onsideration of serious health issues is appropriate in a motion to transfer venue"). The convenience of witnesses is frequently the most important factor in deciding whether a transfer of venue is appropriate. *See A.J. Indus. v. U.S. Dist. Ct.*, 503 F.2d 384, 386–87 (9th Cir. 1974) (noting the importance of the convenience of witnesses in evaluating a motion to transfer venue); *see also GNLV, Corp. v. Se. Amusement, Inc.*, No. 2:14-cv-00048-GMN-PAL, 2015 WL 13678048, at *3 (D. Nev. Mar. 27, 2015) ("Courts regard the convenience of witness of witnesses as the most important to factor in determining whether to transfer a case . . . ."); *Horwitz v. Sw. Forest Indus., Inc.*, 612 F. Supp. 179, 182 (D. Nev. 1985) (In deciding whether to transfer venue, "[t]he convenience of witnesses is of considerable importance.").

Scott Carney is disabled and wheelchair-bound, and Florida is the most convenient forum for him as a witness as he resides in Florida. Carney's residence is located over 2,500 miles away from the District of Nevada's Las Vegas courthouse, while his residence is only a few miles away from the Southern District of Florida in Miami. Under these circumstances, transfer is proper and equitable because requiring Carney to travel from Florida to Nevada would subject him to great and unnecessary

hardship, particularly given Carney's condition. *See Schrager v. Aldana*, No. 2:12–CV–0180–LRH–CWH, 2012 WL 3068785, at *1 (D. Nev. July 26, 2012) (transferring action to New Jersey after noting "the costs of discovery and litigation in Nevada is substantially higher than New Jersey because of the substantial travel costs involved for the multiple parties and witnesses residing outside of Nevada"); *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 153 (D.D.C. 2008) ("A moving party's medical disability can support a motion to transfer venue . . . .").

Another factor, the cost of attendance of the witnesses, weighs in favor of transfer. As explained above, if this matter continued in Nevada, the main defense witness, Scott Carney, will have to travel from Florida to Nevada for the proceedings. This travel would come at a great financial expense to Carney, particularly because he did not choose to litigate or direct his activities to Nevada. *See Lucarelli v. DVA Renal Healthcare, Inc.*, No. 2:07–cv–1205–RLH–RJJ, 2008 WL 150420, at *4 (D. Nev. Jan. 10, 2008) ("[T]he convenience of the [p]arties and witnesses and the interest of justice favor transferring this case to the Southern District of Ohio" due, in part, to the "costs of litigation . . . be[ing] substantially greater because the attorneys and witnesses would be forced to travel for discovery and trial.").

A third factor favoring transfer is the availability of compulsory process for the attendance of unwilling witnesses, which further weighs in favor of transfer when considering this Court's limited ability to subpoena witnesses that may be unwilling to appear. Any event giving rise to this dispute—although no specific event has been alleged in the Amended Complaint—would have occurred in Florida or to the CFTC in Washington, D.C. Consequently, the key witnesses will likely be located in Florida, or Washington, D.C, which is closer to Florida than Nevada. Additionally, if Carney will not be able to appear due to his condition, hearings in Nevada would severely prejudice him, as there is no good substitute for live testimony. *See, e.g.*, *United States v. Thoms*, 684 F.3d 893, 903 (9th Cir. 2012) ("[L]ive testimony is the bedrock of the search for truth in our judicial system."); *Palmer v. Valdez*, 560 F.3d 965, 969 n.4 (9th Cir. 2009) ("The importance of presenting live testimony in court cannot be forgotten." (*quoting* Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendments)); *Niemeyer*

*v. Ford Motor Co.*, No. 2:09-CV-2091 JCM (PAL), 2012 WL 5199145, at *3 (D. Nev. Oct. 18, 2012) ("[V]ideo transmission will deprive [the factfinder] of the ability to make face-to-face determinations about [the key witness's] testimony, demeanor, mannerisms, and reactions to certain questions proffered . . . . This aspect of live, in person testimony is a stalwart of trial testimony.").

Two more factors favoring transfer are the access to sources of proof and contacts relating to Plaintiffs' causes of action in Nevada. Despite Plaintiffs' conclusory allegation that Carney has committed one or more of the acts complained of within this judicial district, Scott Carney's domicile is in Florida, and any alleged events at issue related to this matter would be connected to Florida, as that is where Carney allegedly acted from. Thus, it is more convenient for discovery and for the other uncertainties of litigation to transfer this case to the Southern District of Florida. *See, e.g.*, *Lucarelli*, 2008 WL 150420, at *4 ("[T]he convenience of the [p]arties and witnesses and the interests of justice favor transferring this case to the Southern District of Ohio" due, in part, to "[t]he evidence and witnesses . . . all [being] located in Ohio."); *Ascend GEO, LLC v. OYO Geospace Corp.*, No. 2:09–CV–01172–KJD–PAL, 2009 WL 10692475, at *3) (D. Nev. Aug. 28, 2009) (granting the defendant's motion to transfer venue to the Southern District of Texas where "a majority of the documents relevant to the issues in th[e] case are located . . . in Houston" and "[t]he majority of the potential witnesses identified . . . are located in Houston."). Furthermore, because Plaintiff IML is a New York corporation headquartered in New York City, any alleged evidence would be located there, and any alleged "harm" would have been felt there, and not in Nevada. Am. Compl. ¶ 1. Because nearly all the physical evidence and key witness resides in Florida, and because the alleged events occurred in Florida, the facts of this case heavily favor transfer to the Southern District of Florida.

**B.    Plaintiffs' Choice Of Forum Should Be Disregarded**

The only factor that favors Plaintiffs is their choice of forum. However, it is well established that plaintiffs' choice of forum can be disregarded where, as here, it is the only factor in favor of the

plaintiffs. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff]'s choice [of forum] is entitled to only minimal consideration."); *see also Steven Cohen*, 2016 WL 1170985, at *5 ("[T]h[e] level of deference [given to a plaintiff's choice of forum] is substantially less when the plaintiff's chosen venue lacks a significant connection to the activities alleged in the complaint."); *Editorial Planeta Mexicana, S.A. de C.V. v. Argov*, No. 2:11–CV–01375–GMN–CWH, 2012 WL 3027456, at *5 (D. Nev. July 23, 2012) ("[D]eference is 'substantially reduced when the plaintiff's choice . . . [of] forum lacks a significant connection to the activities alleged in the complaint.'" (citation omitted)).

Here, all acts alleged by Plaintiffs against Carney would have ostensibly occurred in Florida. Furthermore, because Plaintiff IML is a New York corporation headquartered in New York City, any alleged evidence would be located there, and any alleged "harm" would have been felt and related to New York City, and not in Nevada. Am. Compl. ¶ 1. This dispute, therefore, lacks any significant connection to this forum, so Plaintiffs' forum selection should be ignored. Given these reasons, Carney respectfully requests the Court grant his alternative motion to transfer if this matter is not dismissed because the Southern District of Florida is better situated to decide this case.

### IV.  Plaintiffs' Allegations Fail To Meet Basic Pleadings Standards

Plaintiffs' allegations do not meet basic pleading standards required under the Federal Rules of Civil Procedure, nor are they actionable statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (A sufficiently pled cause of action "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

After dropping their civil conspiracy count, Plaintiffs allege against two defendants Defamation

Per Se, Trade Libel, Tortious Interference with Contractual Relations, and Tortious Interference with Prospective Economic Advantage, but do not differentiate who committed which act, nor do they assert facts to support each element of each cause of action asserted against Scott Carney.

Plaintiffs' allegations still (a) fail to state or provide sufficient notice of which purported statements by Carney met which of their asserted claims or their elements, (b) fail to identify which alleged statements were "false," and (c) do not amount to actionable causes of action.

**A.   Plaintiffs Failed To Properly Allege Their Defamation Claim, And It Nevertheless Is Not Actionable**

Under Nevada law, the elements of defamation are: "(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1148 (9th Cir. 2012) (*quoting Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005)). "Statements of opinion are protected speech under the First Amendment of the United States Constitution[,] . . . are not actionable at law," *Lubin v. Kunin*, 17 P.3d 422, 426 (Nev. 2001), and "cannot be defamatory because 'there is no such thing as a false idea.'" *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 88 (Nev. 2002) (*quoting Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974)). "[A] statement is not defamatory if it is an exaggeration or generalization that could be interpreted by a reasonable person as 'mere rhetorical hyperbole.'" *Hussein v. Miller*, No. 03:06-CV-00710-LRH-RAM, 2008 WL 11348299, at *2 (D. Nev. Feb. 26, 2008) (*quoting Pegasus*, 57 P.3d at 88).

Plaintiffs (a) failed to state what part of the alleged false statements were both "false" and "defamatory," (b) failed to allege that the statements were an "unprivileged publication," and (c) failed to state what statements to the CFTC were allegedly false and defamatory. Moreover, filings with the CFTC are confidential, so such statements neither could have been a "publication" nor qualify as defamation. Each of these pleading failures is an independent basis to dismiss Plaintiffs' defamation claim, but even if Plaintiffs did properly plead their defamation claim, it would still fail, as "[s]tatements

of opinion cannot be defamatory . . . ." *See Pegasus*, 57 P.3d at 88.

Finally, Plaintiffs allege Scott Carney's statements were "derogatory" (Am. Compl. ¶ 12), and "implying" something (*id.* ¶ 11), but even if such labels were true, such statements are not actionable. The ability to express an opinion and to critique is protected by the First Amendment, and Carney's "expression[s] of opinion" are accordingly protected free speech. *See Paterson v. Little, Brown & Co.*, 502 F. Supp. 2d 1124, 1136 (W.D. Wash. 2007). Nor are Carney's opinions "sufficiently factual to imply a false factual assertion," therefore preventing Plaintiffs' defamation claim from being actionable. *Gardner v. Martino*, 563 F.3d 981, 989 (9th Cir. 2009). Thus, such statements are protected first amendment opinions, and not actionable statements. *See, e.g.*, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 777 (1985) ("[T]he First Amendment requires significant protection from defamation law's chill for a range of expression far broader than simply speech about pure political issues."); *Cochran v. NYP Holdings, Inc.*, 210 F.3d 1036, 1038 (9th Cir. 2000) ("[A] statement of opinion is . . . entitled to First Amendment protection" unless "it 'impl[ies] a false assertion of fact.'" (*quoting Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990))).

Accordingly, Plaintiffs failed to provide proper notice of their defamation claim nor would it be actionable.

**B.     Plaintiffs Failed To Properly Allege Their Trade Libel Claim**

Trade libel requires "that the defendant: (1) made a statement that disparages the quality of the plaintiff's product; (2) that the offending statement was couched as fact, not opinion; (3) that the statement was false; (4) that the statement was made with malice; and (5) that the statement resulted in monetary loss." *Shuffle Master, Inc. v. Awada*, No. 2:05-CV-1112-RCJ (RJJ), 2006 U.S. Dist. LEXIS 71748, at *17 (D. Nev. Sept. 26, 2006) (citations omitted).

*First*, Plaintiffs fail to allege that any of Carney's purported statements were "couched as fact, not opinion." *Id. Second*, Plaintiffs neither allege (a) *what* was "false" about Carney's purported

statements, nor (b) that Carney "knew" any of his statements were false. Each pleading failure is a separate basis for dismissing Plaintiffs' trade libel claim, but even if Plaintiffs were to have adequately pled a claim for trade libel, the accused statements are at most opinion, unable to be classified as "false." Accordingly, Plaintiffs' trade libel claim fails and should be dismissed.

### C. Plaintiffs Failed To Properly Allege Tortious Interference With Contractual Relations

Under Nevada law, tortious interference with contractual relations requires: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) damages." *Silver State Broad., LLC v. Beasley FM Acquisition Corp.*, No. 2:11–cv–01789–MMD–CWH, 2012 WL 4049481, at *6 (D. Nev. Sept. 12, 2012) (*quoting Consol. Generator-Nev., Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1255 (Nev. 1998)).

Plaintiffs failed to allege (a) what "valid and existing contract" they allegedly had, (b) that Scott Carney knew about it, or (c) that any contracts were "actual[ly] disrupt[ed]." *See id.* Each of these omissions is a distinct basis to dismiss the claim.

### D. Plaintiffs Failed To Properly Allege Tortious Interference With Prospective Economic Advantage

Under Nevada law, tortious interference with prospective economic advantage requires: "1) a prospective contractual relationship between the plaintiff and a third party; 2) the defendant's knowledge of this prospective relationship; 3) the intent to harm the plaintiff by preventing the relationship; 4) the absence of privilege or justification by the defendant; and, 5) actual harm to the plaintiff as a result of the defendant's conduct." *Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1225 (Nev. 1987) (*cited with approval in Jiangmen Kinwai Furniture Decoration Co. v. Int'l Mkt. Ctrs., Inc.*, 719 F. App'x 556, 559 (9th Cir. 2017)).

Plaintiffs failed to (a) allege or attach what "prospective contractual relationship" Plaintiffs allegedly had, (b) identify any "third party" they had a "prospective contractual relationship" with, (c)

assert that Carney knew about the "prospective relationship," or (d) state that he had an "intent" to harm a *particular* prospective relationship.  *See id.*  Again, each pleading deficiency separately provides an independent basis for this claim's failure, and accordingly, this claim should be dismissed.

## CONCLUSION

Because Scott Carney's contacts were not, nor alleged to be, "continuous and systematic" with Nevada, nor has he "targeted" or "directed his activities" to Nevada, Carney respectfully requests this Court to enter an order dismissing the Amended Complaint in its entirety under Rules 12(b)(2) and 12(b)(3).  If personal jurisdiction is found proper, Carney alternatively requests that this Court transfer this action from the District of Nevada to the Southern District of Florida in Miami, pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and in the interests of justice.  Carney further respectfully requests this Court to dismiss each of Plaintiffs' claims against him under Federal Rule of Civil Procedure 12(b)(6) because they fail to state a claim, provide notice of, or allege facts to meet the elements of each cause of action, and because any alleged statements made by him are nevertheless not actionable.

DATED June 7, 2018.

MCNUTT LAW FIRM, P.C.


*/s/ Dan McNutt*
DANIEL R. MCNUTT (SBN 7815)
MATTHEW C. WOLF (SBN 10801)
625 South Eighth Street
Las Vegas, Nevada 89101

*Attorneys for Defendant
Scott Carney*

**CERTIFICATE OF MAILING**

I HEREBY CERTIFY that pursuant to F.R.C.P. 5 on June 7, 2018, I caused service of the foregoing **DEFENDANT SCOTT CARNEY'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND TO DIMISS FOR FAILURE TO STATE A CLAIM, OR ALTERNATIVELY TO TRANSFER** by mailing a copy by United States Postal Service, postage prepaid, via email, or via electronic mail through the United States District Court's CM/ECF system to the following at their last known address or e-mail:

P. Sterling Kerr, Esq. (SBN 3978)
George E. Robinson, Esq. (SBN 9667)
LAW OFFICES OF P. STERLING KERR
3450 St. Rose Parkway, Suite 120
Henderson, Nevada 89074
sterling@sterlingkerrlaw.com
george@sterlingkerrlaw.com
Attorneys for Plaintiffs

           */s/ Lisa Heller*
           An Employee of McNutt Law Firm, P.C.