P. STERLING KERR, ESQ.
Nevada Bar No. 3978
GEORGE E. ROBINSON, ESQ.
Nevada Bar No. 9667
LAW OFFICES OF P. STERLING KERR
2450 St. Rose Parkway, Suite 120
Henderson, Nevada 89074
Telephone No. (702) 451–2055
Facsimile No. (702) 451-2077
Email: sterling@sterlingkerrlaw.com
Email: george@sterlingkerrlaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| INTERNATIONAL MARKETS LIVE, INC., a New York corporation; CHRISTOPHER TERRY, an individual; <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT CARNEY, an individual; ETHAN VANDERBUILT, an individual; <br><br> Defendants. | Case No.: 2:18-cv-00187-JAD-GWF <br><br> **OPPOSITION TO DEFENDANT SCOTT CARNEY'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND TO DISMISS FOR FAILURE TO STATE A CLAIM, OR ALTERNATIVELY TO TRANSFER** |

COMES NOW Plaintiffs INTERNATIONAL MARKETS LIVE (hereafter "IML")

and CHRISTOPHER TERRY, by and through their attorneys the Law Offices of P. Sterling

Kerr, and hereby oppose Defendant SCOTT CARNEY's Motion to Dismiss Pursuant to Fed.

R. Civ. P. 12(b)(2), 12(b)(3) and 12(b)(6).

/ / /

/ / /

Page **1** of **15**

1
2
3

This Opposition is made and based upon all the papers and pleadings on file herein, the Points and Authorities attached hereto, and such oral argument as may be adduced at a hearing of this matter.

4       DATED this 21st day of June, 2018.

5                                                    LAW OFFICES OF P. STERLING KERR

6

7       By:___ /s/ George E. Robinson _____
              P. STERLING KERR, ESQ.
8             Nevada Bar No. 3978
              TAYLOR SIMPSON, ESQ.
9             Nevada Bar No. 13956
              2450 St. Rose Parkway, Suite 120
10            Henderson, Nevada 89074

11

12                **MEMORANDUM OF POINTS AND AUTHORITIES**

13      **I.      INTRODUCTION**

14      The Court must deny CARNEY'S Motion to Dismiss because CARNEY has sufficient contacts with Nevada for the Court to have specific personal jurisdiction over these claims, because venue is proper, and because the claims have been properly pled as to fulfill the requirements of FRCP 8(a)(2).[1]  CARNEY wants this Court to believe that he can sit behind the protection of his computer screen and spread across the internet defamatory statements alleging Plaintiffs have engaged in criminal acts and unethical business decisions without consequence in order to enhance his own business ventures.

CARNEY repeatedly makes false statements in his Motion that he "did not perform any of the alleged acts in, direct his conduct to, or target the State of Nevada."  *See* Motion to Dismiss at pgs. 2, 4, 5.  Defendant CARNEY travelled to Las Vegas regarding the subject matter in question.  Plaintiffs specified in the Amended Complaint that the tortious acts in

15-28

---

[1] Plaintiffs do not dispute that this Court does not have general jurisdiction over Defendant CARNEY.

question were posted on the internet, and that the tortious statements were directed toward

the Plaintiffs including TERRY who lives in the State of Nevada. The Amended Complaint

states on page 2:

> 8.      In February of 2016, CARNEY travelled to Las Vegas, Nevada to meet with Plaintiffs regarding Forex trading techniques.
>
> 9.      While in Las Vegas, Nevada, TERRY and CARNEY record online videos regarding Forex trading from TERRY's Las Vegas residence.
>
> 10.      Since this time, the relationship between Plaintiffs and CARNEY has degraded to CARNEY publishing tortious statements regarding Plaintiffs on his websites and social media.

Pursuant to the case law, the above allegations found in the Amended Complaint along

with the statements quoted from CARNEY's Facebook page are the only factual assertions

necessary to establish specific personal jurisdiction of this Court over CARNEY.  Venue is

proper in the District of Nevada for the same reasons that jurisdiction is proper, and the case

should not be dismissed or transferred due to venue concerns.  Therefore, this Court should

deny Plaintiff's Motion to Dismiss or Transfer this case as this case was properly filed in the

District of Nevada.

**II.      ANALYSIS**

A.  <u>MOTION TO DISMISS STANDARD</u>

According to FRCP 12(b)(6) a court may dismiss a complaint for "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must

provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief."

FRCP 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does

not require detailed factual allegations, it demands more than "labels and conclusions or a

formulaic recitation of the elements of a cause of action. . . " *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (citation omitted) (internal quotations omitted). "Factual allegations must be enough

1
2
3

to rise above the speculative level." Twombly, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

4
5
6
7
8
9
10
11
12

In *Iqbal*, the Supreme Court clarified the two-step approach to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 678.

13
14
15
16
17

Where the complaint permits the court to infer more than the mere possibility of misconduct, the complaint has "alleged - but not shown - that the pleader is entitled to relief." *Id*. at 679 (internal quotations omitted). When the allegations in a complaint have crossed the line from conceivable to plausible, plaintiff's claim must survive. *See Twombly*, 550 U.S. at 570.

18
19
20
21
22
23
24
25

A federal court must apply the substantive law of the forum state when a federal question is not involved. *See Cornett v. Gawker media*, LLC, 2014 WL 2863093, at 5 (D. Nev. June 23, 2014); see also *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78-80, 58 S.Ct. 817, 82 L.Ed.1188 (1938). Likewise, when "federal subject matter jurisdiction is based on diversity, courts apply the law of the forum state to determine which state's statute of limitations to apply." *Id*. (citing to *Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945); see also *Flowers v. Carville*, 310 F.3d 1118, 1123 (9th Cir. 2002)). As such Nevada substantive law applies here.

26
27
28

As to the request to dismiss pursuant to FRCP 12(b)(2) for lack of personal jurisdiction, "[a]t the motion to dismiss stage, a plaintiff is generally required only to make out a prima facie showing of personal jurisdiction to overcome a 12(b)(2) motion." *See Glencore Grain*

1

*Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1119 (9th Cir. 2002).

2

3

    B.  THE DISTRICT COURT OF NEVADA HAS SPECIFIC PERSONAL JURISDICTION OVER THE CLAIMS MADE AGAINST CARNEY IN THIS CASE

4

5

        This Court has specific personal jurisdiction over the claims alleged in the Amended

6

Complaint pursuant to the Nevada long arm statute, and the recent federal case law outlining

7

the requirements of personal jurisdiction regarding allegations of tortious activity by a

8

defendant on the internet.  As stated in CARNEY's Motion, "Where, as here, no federal statute

9

authorizes personal jurisdiction, the district court applies the law of the state in which the court

10

sits. Fed. R. Civ. P. 4(k)(1)(A); Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th

11

Cir.1998)." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F. 3d 1218 - Court of Appeals,

12

13

9th Circuit 2011.  The federal court has analyzed the Nevada statute, "Nevada's long-arm statute

14

permits the exercise of jurisdiction to the same extent as the Constitution. Nev.Rev.Stat. §

15

14.065 (2001). Hence, we consider only the constitutional principles of due process which

16

require that RII have minimum contacts with Nevada 'such that the maintenance of the suit

17

does not offend traditional notions of fair play and substantial justice.' *Int'l Shoe Co. v.

18

Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)." *Rio Properties, Inc. v. Rio

19

Intern. Interlink*, 284 F. 3d 1007 (9th Cir. 2002).

20

21

        The Ninth Circuit uses an analysis of three elements to determine whether personal

22

jurisdiction over a defendant exists, "(1) The non-resident defendant must *purposefully direct

23

his activities* or consummate some transaction with the forum or resident thereof; *or* perform

24

some act by which he *purposefully avails himself* of the privilege of conducting activities in the

25

forum, thereby invoking the benefits and protections of its laws; (2) the claim must be

26

one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise

27

of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

28

1
2
3

*Schwarzenegger,* 374  F.3d  at  802 (quoting *Lake  v.  Lake,* 817  F.2d  1416,  1421  (9th Cir.1987) (emphases added)); *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F. 3d 1218 (9th Cir. 2011).

4
5
6
7
8
9
10

The *Mavrix* case goes on to discuss the first factor in the context of a tort case like this one.  "The 'effects' test, which is based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), requires that 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.' *Brayton Purcell*, 606 F.3d at 1128 (quoting Yahoo!, 433 F.3d at 1206).  *Id*. at 1228.

11
12
13
14
15
16

Here, the Amended Complaint quotes CARNEY's Facebook page which states that CARNEY is explicitly targeting "Chris" and #ChrisTerry, referring to TERRY, and explicitly talking about Las Vegas.  *See* Amended Complaint at p. 2-3.  It is alleged in the Amended Complaint CARNEY knows that TERRY lives in Nevada because CARNEY was making videos at TERRY's residence.  *Id*.

17
18
19
20
21
22
23
24
25
26
27
28

The *Mavrix* case is important to discuss in this situation because there is an analysis of personal jurisdiction in the context of website and internet activity.  The *Mavrix* states that the defamatory acts must be "'expressly aimed at the forum state' . . . In prior cases, we have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed. *See, e.g., Brayton Purcell*, 606 F.3d at 1129-31; *Pebble Beach*, 453 F.3d at 1156-58; *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019-21 (9th Cir.2002); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321-22 (9th Cir.1998); *Cybersell*, 130 F.3d at 417. On the one hand, we have made clear that "maintenance of a passive website alone cannot satisfy the express aiming prong." *Brayton Purcell*, 606 F.3d at 1129. On the other, we have held that "operating even a passive website in conjunction with `something more' — conduct directly targeting the forum

— is sufficient." *Rio Props*., 284 F.3d at 1020. In determining whether a nonresident defendant has done "something more," we have considered several factors, including the interactivity of the defendant's website, e.g., *Pebble Beach*, 453 F.3d at 1153-54, 1158; *Cybersell*, 130 F.3d at 417-20; the geographic scope of the defendant's commercial ambitions, e.g., *Pebble Beach*, 453 F.3d at 1156-58; *Rio Props*., 284 F.3d at 1020-21; and whether the defendant "individually targeted" a plaintiff known to be a forum resident, e.g., *Brayton Purcell*, 606 F.3d at 1129; *Pebble Beach*, 453 F.3d at 1156-57; *Panavision*, 141 F.3d at 1321-22.

Here, there are personal statements about TERRY that attack his personal character and integrity. TERRY is a resident of Nevada. CARNEY continues to make clear misstatements in his Motion to Dismiss regarding the facts of the Amended Complaint as if CARNEY did not bother to read the pleading. CARNEY states that "Carney's activities, as alleged or otherwise, do not relate to, do not target, nor are directed toward Nevada." *See* Motion to Dismiss at p. 4. Further stating, "none of the actions he is accused of committing were directed towards Nevada." *See* Motion to Dismiss at p. 5. The language of the Amended Complaint and CARNEY's online statements obviously contradict this statement. On pages 2 and 3 of the Amended Complaint, Plaintiffs allege:

> 17.    On or about March 10, 2018, CARNEY posts, "Harmonic Traitor Update: iMarketsLive has filed a $4million defamation lawsuit against myself and 3 other individuals. They know that I have a $100 mil ip civil suit in the works! But Chris, BIG MISTAKE! These deceit that you so easily employ to grow your scheme in the name of my work is over! I am filing both a SLAAP and countersuit, just in time for the big iml Vegas Expo. If you an iml affiliate, DELETE ME NOW and the REAL Harmonic TRADERS can stay tuned. #HarmonicTakeover #imarketslive #ChrisTerry #harmonictraitors #GetYoPopcorn"

> 18.    On or about April 4, 2018, CARNEY posts, "Just recd 2nd complaint from imarketslive - serving me papers twice on their $4million defamation lawsuit. At this point, it's harassment. If you are in iml, iml group or affiliated or know someone who is, you need to know that your so-called leaders are suing the very guy (ME) who created the work they are copying. If you have any respect for me,

my work and most important, YOURSELF, LEAVE IML NOW! Any iml member or rep that sends me a confirmed cancellation of imarketslive membership will get GOLD MEMBERSHIP and SOFTWARE FREE 30-days. Send to ht@ht.com #HarmonicTakeover #Dryland #HarmonicKarma #CFTCBitch #30daystilimarketslivetakedown"

19.    On or about March 16, 2018, CARNEY posts, "What's #HarmonicTakeover? The #iml Titanic! Have fun rising in Vegas as you hit the iceberg while I watch from dry land! 30Days."

Plaintiffs' allegations contain quotes from CARNEY's Facebook page which state that CARNEY is explicitly targeting "Chris" and #ChrisTerry, referring to TERRY, and explicitly talking about Las Vegas. It is alleged in the Amended Complaint CARNEY knows that TERRY lives in Nevada because CARNEY was making videos at TERRY's residence.[2] It is incontrovertible and a nonsensical claim that the conduct alleged in the Amended Complaint is not directed towards TERRY and Nevada. The mere omission of the paragraphs in the Amended Complaint for his Motion to Dismiss does not make the allegations disappear from the pleading.

C.   VENUE IS PROPER IN THE DISTRICT OF NEVADA

The law suit should not be dismissed pursuant to FRCP 12(b)(3) as venue is proper in the state of Nevada. 28 U.S.C. 1391(b) states:

(b)Venue in General.—A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

---

[2] These videos are readily assessable on the internet. One video can be found at https://www.youtube.com/watch?v=0_5eKdhDnPM.

1
2
3
4
5
6
7
8
9
10
11

Pursuant to the statute, venue in the District of Nevada is proper.  28 U.S.C 1391(b)(1) does not apply as the Defendants in this case are not residents of the same state, CARNEY and VANDERBUILT are from Florida and California respectively.  28 U.S.C 1391(b)(2) does not necessarily apply either because the defamatory statements leading to the claims were posted on the internet.  If 28 U.S.C 1391(b)(2) does apply, then Nevada would be proper as some of the statements were purposefully and explicitly directed towards a Nevada resident.  Pursuant to 28 U.S.C 1391(b)(3), this claim is proper in the District of Nevada as this Court has personal jurisdiction over CARNEY because of the actions taken by CARNEY in coming to the state of Nevada regarding the subject matter in question and his tortious statements directed towards TERRY and the state of Nevada.  A through analysis of jurisdiction was presented above.

12
13

D.  THE EVALUATION OF THE FACTORS REGARDING VENUE INDICATE THAT THIS CASE SHOULD NOT BE TRANSFERRED TO THE SOUTHERN DISTRICT OF FLORIDA

14
15
16
17
18

This Court should deny CARNEY's request to transfer this case to Florida pursuant to 28 U.S.C 1404.  CARNEY should not be able to come to Nevada and direct tortious statements against a person who resides in the state of Nevada to boost his own business venture, and then ask the Court to transfer the case for his convenience.

19
20
21
22
23

The pertinent language of 28 U.S.C 1404 states "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The federal court has expounded on 28 U.S.C 1404 stating:

24
25
26
27
28

Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case. *Id.* For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the

1
2
3
4
5

> contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis. A forum selection clause, however, is not dispositive. *Jones v. GNC Franchising, Inc.*, 211 F. 3d 495 (9th Cir. 2000) (internal citations omitted).

6
7
8
9
10
11

From the start of his Motion to Dismiss, CARNEY attempts to falsely garner sympathy from this Court, stating numerous times that he is disabled.  CARNEY has been in a wheel chair for decades, and this was the case when he travelled to Las Vegas to meet with TERRY, and throughout their relationship. It is not a recent occurrence which has disabled him, and at all times relevant to this case, CARNEY has been in a wheel chair.

12
13
14
15
16
17
18
19
20
21
22
23
24

In this case, CARNEY came to Nevada to TERRY's residence and produced videos at TERRY's residence regarding the FOREX trading which the defamatory statements relate to. CARNEY posts (publishes) defamatory statements for the world to see on Facebook. Moroever, CARNEY intentionally directed these statements against a Nevada resident and included TERRY'S relation to Nevada's in the posts.  The governing law is not at issue in this situation as this is not a contract case with a choice of laws provision.  CARNEY's legal fees should not be at issue as it appears that CARNEY has chosen a Chicago firm to represent him. This Chicago firm would have to associate with Florida counsel just as it has associated with Nevada counsel. CARNEY nonsensically argues that some of his witnesses are in Washington DC, so the case should be transferred to Florida.  Clearly, the problems with Washington DC witnesses and compulsory attendance would be the same if this case was in Washington DC or Nevada.

25
26
27

The evaluation of the factors in *Jones* indicates that the case should not be transferred to the Southern District of Florida, therefore the Court should deny Defendant's Motion for Inconvenient Forum.

28

### E.  THE CLAIMS IN THE COMPLAINT ARE PROPER AND SHOULD NOT BE DISMISSED PURSUANT TO FRCP 12(b)(6)

None of the four claims made against the CARNEY should be dismissed for failure to state a claim upon which relief can be granted.  First, Plaintiffs have properly pled the elements of a defamation claim pursuant to Nevada case law, and this Court should deny the request to dismiss this claim pursuant to FRCP 12(b)(6).

The Court must analyze the Motion to Dismiss with the understanding that the requirement of Plaintiff pursuant to FRCP 8(a)(2) is to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Plaintiff has fulfilled this requirement in each of the claims against CARNEY.

As cited in CARNEY'S Motion, "Under Nevada common law, defamation requires '(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.' *Pope v. Motel 6*, 121 Nev. 307, 114 P.3d 277, 282 (2005)." *Tsao v. Desert Palace, Inc.*, 698 F. 3d 1128 (9th Cir. 2012).

The general allegations section of the First Amended Complaint quote some of the statements in question.  CARNEY's statements state that, amongst other things, Plaintiffs are running a federally illegal scheme and that Plaintiffs' business is going to fail or "sink like the Titanic." *See* Amended Complaint at p. 2-3.  In the Amended Complaint, Plaintiffs allege that these statements are false.  *Id*. at 4.  Additionally, these statements are considered defamation per se pursuant to Nevada case law as they impute a criminal act and lack of fitness for business.

> Certain classes of defamatory statements are considered so likely to cause serious injury to reputation and pecuniary loss that these statements are actionable without proof of damages. The four types of slander historically designated as defamatory per se are false statements made involving: (1) the imputation of a crime; (2) the imputation of having a loathsome disease; (3) imputing the person's lack of fitness for trade, business, or profession; and (4) imputing serious sexual misconduct. No proof of any actual harm to

reputation or any other damage is required for the recovery of damages for these four kinds of slander. "Otherwise stated, proof of the defamation itself is considered to establish the existence of some damages, and the jury is permitted, without other evidence, to estimate their amount." *K-Mart Corporation v. Washington*, 866 P. 2d 274 (Nev. 1993).

The statements in question were published on the internet to third parties. *Id*. Damages for defamation per se are actionable without proof of damages.  *See Id.*   Therefore, the defamation claims have been properly noticed in the Amended Complaint against CARNEY.

The evaluation of the defamation claim is very similar to the Trade Libel claim.  All of the elements of the trade libel claim have been properly pleaded in the Amended Complaint. For trade libel, it is necessary to plead that the defendant published a statement about Plaintiffs' business; which disparages the business; the statement was false; and defendant was at least negligent in making the statement.  *Bongiovi v. Sullivan*, 122 Nev. 556, 138 P.3d 433 (2006); *Chowdry v. NLVH, Inc.*, 109 Nev. 478, 851 P.2d 459 (1993).  These elements were covered in the paragraphs above, and this claim is a valid one which should not be dismissed pursuant to FRCP 12(b)(6).

The tort claims of Tortious Interference with Contractual Relations and Tortious Interference with Prospective Economic Advantage claims should not be dismissed as they have been properly pled in the Amended Complaint. As for Tortious Interference with Contractual Relations, the Amended Complaint states:

> Plaintiff IML had contractual relationships with customers and individual representatives who desired participate in receiving educational products for Forex markets.  Defendants know of these relationships. Defendants spread false information and affirmatively filed false complaints with regulators with the intent of disrupting Plaintiff's relationships with its customers. Defendants' conduct was not legally justified.  As a direct and proximate result of Defendants' interference with IML's contractual relationships, Plaintiff has been harmed in amount in excess of one million dollars ($1,000,000.00). *See* Amended Complaint at p. 5.

Plaintiff IML has alleged valid and existing contracts with representatives regarding

Forex educational products, Defendant knew of the contracts, and the contracts were disrupted. All of the required elements are in the claim for relief, and Defendant CARNEY's motion should be denied.

CARNEY asks the Court to dismiss the Tortious Interference with Economic Advantage claim as well, but, like his request regarding the previous claim of Tortious Interference with Contractual Relations, his request is without merit.  CARNEY states that Plaintiffs failed to allege what prospective relationship has been interfered with when the face of the Amended Complaint states that IML "had prospective contractual relationships with customers and individual representatives who desired [to] participate in receiving educational products for Forex markets." *Id*. at p. 6.   The Amended Complaint states that Carney knew about the prospective relationships, intended to prevent them, and the Defendants suffered damage as a result.  This is all that is necessary pursuant to the notice pleading requirements of FRCP 8(a)(2), and the request to dismiss should be denied.

### F.   LEAVE TO AMEND SHOULD BE GRANTED IN ORDER TO AMEND PERCEIVED DEFICIENCIES IN THE AMENDED COMPLAINT

Alternatively, FRCP 15(a) directs that leave shall be freely given to amend a pleading when justice so requires. Insofar as this Court finds the cause of action in Plaintiffs' Amended Complaint to be improperly pled, Plaintiffs requests leave of this Court to amend the Complaint accordingly.

/ / /

/ / /

### III.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny CARNEY's Motion to Dismiss in its entirety as it is without merit.

DATED this 21st day of June, 2018.


LAW OFFICES OF P. STERLING KERR


By:   /s/ George E. Robinson
    P. STERLING KERR, ESQ.
    Nevada Bar No. 3978
    GEORGE E. ROBINSON, ESQ.
    Nevada Bar No. 9667
    2450 St. Rose Parkway, Suite 120
    Henderson, Nevada 89074

## CERTIFICATE OF SERVICE

1

2    The undersigned hereby certifies on June 21, 2018, a true and correct copy of

3  **OPPOSITION  TO  DEFENDANT  SCOTT  CARNEY'S  MOTION  TO  DISMISS**

4  **PLAINTIFF'S     AMENDED     COMPLAINT     FOR     LACK     OF     PERSONAL**

5  **JURISDICTION, IMPROPER VENUE, AND TO DISMISS FOR FAILURE TO STATE**

6  **A CLAIM, OR ALTERNATIVELY TO TRANSFER** was served to the following at their

7
   last known address(es), facsimile numbers and/or e-mail/other electronic means, pursuant to:
8

9    ___X___          **BY E-MAIL AND/OR ELECTRONIC MEANS**:  addressees (s)
                       having consented to electronic service, I via e-mail, Electronic
10                      Service through the Court's electronic filing system, or other
                       electronic means to the e-mail address(es) of the addressee(s).
11

12   Adam Wolek
     Taft Stettinius & Hollister
13   111 E. Wacker Drive, Suite 2800
     Chicago, IL 60601
14   awolek@taftlaw.com

15
     Daniel McNutt
16   McNutt Law Firm
     625 South 8th St.
17   Las Vegas, NV 89101
     drm@mcnuttlawfirm.com
18

19                                      /s/ Lisa Peters

20                                      _____
                                        An employee of the LAW OFFICES OF
21                                      P. STERLING KERR

22

23

24

25

26

27

28