DANIEL R. MCNUTT (SBN 7815)
MATTHEW C. WOLF (SBN 10801)
MCNUTT LAW FIRM, P.C.
625 South Eighth Street
Las Vegas, Nevada 89101
Tel.: (702) 384-1170 / Fax.: (702) 384-5529
drm@mcnuttlawfirm.com
mcw@mcnuttlawfirm.com

Adam Wolek (*pro hac vice*)
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601
Tel: 312.836.4063
Fax: 312.966.8598
awolek@taftlaw.com

*Attorneys for Defendant Scott Carney*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| INTERNATIONAL MARKETS LIVE, INC., a New York corporation; CHRISTOPHER TERRY, an individual;<br><br>      Plaintiffs,<br><br>      vs.<br><br>ROBERT HALTERMAN, an individual; SCOTT CARNEY, an individual; ETHAN VANDERBUILT, an individual;<br><br>      Defendants. | Case No.: 2:18-cv-00187-JAD-GWF<br><br>**DEFENDANT SCOTT CARNEY'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND TO DIMISS FOR FAILURE TO STATE A CLAIM, OR ALTERNATIVELY TO TRANSFER** |

Plaintiffs ask the District of Nevada to be their enforcers to muzzle their critics, and to be the first court in the country to find personal jurisdiction based on post-suit Facebook posts or a hashtag.[1]  Because the basis of Plaintiffs' personal jurisdiction claim over Defendant Scott Carney

---

[1] Plaintiffs have sued at least ten critics for defamation and tortious interference in the District of Nevada based on Facebook posts, none of which were Nevada residents.  *Int'l Markets Live, Inc. et al. v. Halterman et al.*(2:18-cv-00187); *Int'l Markets Live, Inc. et al. v. Santiago et al* (2:18-cv-01112-KJD-PAL).

happened after they sued him, the post-suit Facebook posts should not be considered in the personal jurisdiction analysis.  In other words, Plaintiffs effectively concede they lacked personal jurisdiction when they filed their suit, which lethal.  But even if the post-suit Facebook posts were considered, they do not support that Defendant "targeted" or "purposeful directed" his activities to Nevada.  Rather, they were generalized Facebook posts that were just as targeted to readers in Paris or Rome as they were to Miami.  And because Plaintiffs concede that Carney neither resides in Nevada nor were his "acts" committed there, and because there is no personal jurisdiction, venue is also improper.

Even assuming jurisdiction before this Court were proper, this suit should be dismissed (1) because Plaintiffs fail to state which aspects of the Facebook posts are false, and (2) because they are not actionable as they are privileged opinions protected under the First Amendment or, at most, mere puffery.

Because Mr. Carney is disabled and wheelchair-bound, resides in Miami, and because all accused acts occurred in Miami, if this Court does not dismiss this suit, Mr. Carney respectfully requests that this Court transfer this suit to the Southern District of Florida, Miami Division, due to its proximity to his house as transportation to that courthouse would be significantly more convenient.

### A. Plaintiffs' Arguments for Personal Jurisdiction Impermissibly Rely on Post-Suit Conduct, Are Insufficient for Personal Jurisdiction, and Are Not Actionable

Plaintiffs concede that there is no general personal jurisdiction against Defendant Carney. Pls' Opp'n, ECF No. 25, at 2 n.1.  It is further undisputed that none of the accused conduct occurred in Nevada.  And critically, Plaintiffs fail to show that Carney directed his activities to Nevada. Indeed, Plaintiffs' arguments for specific personal jurisdiction over Carney rely on a hashtag, post-suit Facebook posts where Las Vegas is mentioned only once, and visits to Las Vegas that preceded and are unrelated to any accused conduct.  Plaintiffs accordingly have failed to show that Carney "purposefully directed" the accused conduct at Nevada.  At most, Carney's Facebook posts no more targeted Nevada than any other state or country.

Fatally, the only conduct Plaintiffs cite in support of jurisdiction in Nevada occurred after

they filed suit against Carney.  To be sure, conduct occurring after the complaint has been filed cannot establish personal jurisdiction.  *See Thomas P Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980) ("[A]s the [defendant] notes, [a] visit [that] occurred after the filing of the complaint in [an] action . . . cannot establish jurisdiction."); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins.*, 907 F.2d 911, 913 (9th Cir. 1990) ("Only contacts occurring prior to the event causing the litigation may be considered" for the personal jurisdiction analysis.).  Notably, Plaintiffs filed the suit against Carney on February 1, 2018.  Compl., ECF No. 2.  Yet all of the allegations Plaintiffs use to tie Carney to Nevada occurred ***after*** the suit was filed.  *See id.* (suit filed on February 1, 2018); *and see* Am. Compl., ECF No. 19, ¶ 15 (March 10, 2018), ¶ 16 (April 4, 2018), ¶ 17 (March 16, 2018), ¶ 18 (March 19, 2018), ¶ 19 (May 19, 2018), ¶ 20 (May 24, 2018), ¶ 21 (April 3, 2018); *and see also Menalco, FZE v. Buchan*, 602 F. Supp. 2d 1186, 1195 (D. Nev. 2009) ("[F]or specific jurisdiction, the Court does not consider events occurring after the Complaint is filed to determine whether Defendants are subject to personal jurisdiction in this action.").  Because Plaintiffs showed zero basis for personal jurisdiction at the time of filing, and because they still have not presented any basis for personal jurisdiction at the time they filed the suit, their new allegations should be disregarded.  But even if the post-suit conduct is considered, it is insufficient to find personal jurisdiction.

Plaintiffs argue that because Carney had previously visited Las Vegas, personal jurisdiction is supported.  However, such visits predate and are unrelated to any of the accused conduct.  Due to the visits' irrelevance, they do not constitute "case-linked" conduct required to find "purposeful direction of conduct" for personal jurisdiction.  *Walden v. Fiore*, 571 U.S. 277, 283 n. 6 (2014) ("'Specific' or 'case-linked' jurisdiction 'depends on an affiliatio[n] between the forum and the *underlying controversy* . . .'") (alteration in original; emphasis added) (citation omitted).

Plaintiffs also argue that a hashtag of "#ChrisTerry" and "Chris" in a post-suit Facebook post is evidence of targeting towards Nevada.  But no court in the nation has found anyone subject to personal jurisdiction based off a hashtag.  Even so, the Facebook posts were written in Florida at Carney's residence, and knowledge or post-suit acknowledgement of a plaintiff living in Las Vegas on a Facebook post is insufficient to confer personal jurisdiction.  Indeed, it is well-

3

1   established that knowledge of where a plaintiff lives is insufficient for personal jurisdiction

2   purposes, and does not establish purposeful direction of activities to a state.  *See Walden v. Fiore*,

3   571 U.S. at 289 (Knowledge that a plaintiff will suffer foreseeable harm in a venue is insufficient

4   to establish personal jurisdiction because such an approach to the "analysis [would] impermissibly

5   allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis.");

6   *and see Ariel Invs., LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) ("The

7   Supreme Court . . . held that a defendant's knowledge and intent concerning a resident of State A

8   do not justify compelling that person to defend himself there.").  To be sure, those Facebook posts

9   could have been seen by persons anywhere, so they were just as directed to Miami, Paris or Rome,

10  so do not amount to purposefully direction of activities to Nevada.  *See Rockwell Automation, Inc.*

11  *v. Beckhoff Automation, LLC*, 23 F. Supp. 3d 1236, 1245 (D. Nev. 2014) ("[T]he fact that [a]

12  website is viewable in Nevada (as elsewhere), or the fact that [a defendant] might have reason to

13  suspect that its products . . . might end up in Nevada, is not enough to assert specific jurisdiction

14  over [the defendant] in Nevada without evidence of Nevada-specific targeting.").

15          Even if post-suit Facebook posts could be considered for personal jurisdiction, which they

16  cannot, Plaintiffs' argument that paragraphs 17, 18, and 19 of their Amended Complaint support

17  specific personal jurisdictional fails because they are not actionable statements or purposefully

18  directed to Nevada.  For instance, the first paragraph has a hashtag and one reference to "Chris,"

19  which is not purposeful direction to Nevada or tortious (Am. Compl. ¶ 17), the second merely

20  mentions the suit and offers a discount for leaving International Markets Live ("IML"), which is

21  not tortious and is actually directed to a New York entity (¶ 18), and the third states that IML, a

22  New York entity, is a titanic, which is neither directed to Nevada nor tortious—if it were, every

23  stock analyst, website or news program would potentially be liable if they opined that a company

24  would not grow.  Thus, the statements are not actionable, and if even if they were, they were

25  directed to the New York entity International Markets Live, not Nevada.

26          Plaintiffs cite *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir.

27  2011) in support of their arguments, but the *Mavrix* case preceded *Walden v. Fiore*, where the

28  Supreme Court reiterated that "mere injury to a forum resident is not a sufficient connection to the

forum.  Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."  571 U.S. at 290. *Mavrix* nevertheless is distinguishable because in that case, the defendant had contracts with Californian companies to advertise the offending website in California, used a Californian website designer, and explicitly directed the offending advertisements to California because "the advertisements targeted California residents."  *Mavrix,* 647 F.3d at 1222, 1230.  None such findings are present here, nor did Plaintiffs allege any such contacts with Nevada.

In conclusion, Plaintiffs do not show any pre-suit conduct by Carney purposefully directing his activities at Nevada, and only allege post-suit conduct that consists of Facebook posts written in Florida and a hashtag.  The posts are neither actionable nor show direction towards Nevada, and even if they were actionable, they were directed at International Markets Live, a New York entity.

## B.  Venue Cannot Be Established in Nevada

Plaintiffs concede that there is no basis for venue in the District of Nevada under 28 U.S.C. 1391 § (b)(1) because Carney does not live in Nevada (Pls' Opp'n at 9, lns. 2-3), nor under 28 U.S.C. 1391 § (b)(2) as the actions that give rise to the claim did not occur in Nevada.  *Id*., lns. 3-5.  Finally, 28 U.S.C. §§ 1391 (b)(1)-(3) mandate venue to be proper in Florida not Nevada because Florida is where Carney posted the comments on Facebook, Florida is where he resides, and Florida is where personal jurisdiction is proper over Carney.  While Plaintiffs contend their claims are proper in the District of Nevada under 28 U.S.C. 1391 § (b)(3) "because of the actions taken by CARNEY in coming to the state of Nevada regarding the subject matter in question and his tortious statements directed towards TERRY and the state of Nevada[,]" that is a red-herring because Carney's prior visits to Nevada are unrelated to any accused conduct.  In other words, Carney's prior visits to Nevada were not tied to the accused conduct, so the accused "acts" did not take place there.  Accordingly, because there is no basis to find venue under 28 U.S.C. §§ 1391 (b)(1)-(3), Carney respectfully requests that the motion to dismiss for improper venue be granted.

## C.  Plaintiffs Do Not Rebut that the Southern District of Florida Is More Convenient for Carney

Despite conceding that Mr. Carney is disabled and wheelchair bound, Plaintiffs then argue

that "CARNEY attempts to falsely garner sympathy from this Court, stating numerous times that he is disabled." Pls' Opp'n at 10, lns. 6-7. To be sure, Mr. Carney's disability is (1) not "false," and (2) a genuine reason why Florida is a more convenient venue. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."); *GNLV, Corp. v. Se. Amusement, Inc.*, No. 2:14-cv-00048-GMN-PAL, 2015 WL 13678048, at *3 (D. Nev. Mar. 27, 2015) ("Courts regard the convenience of witness as the most important to factor in determining whether to transfer a case . . . ."). It is self-evident that it is more convenient to use a personal, wheelchair-accessible car to a courthouse a few miles from home, than plan and take multiple car trips with unknown support for wheelchairs to and from airports and hotels, move around a plane with narrow aisles, and travel across at least two airports.

Plaintiffs also argue that "CARNEY posts (publishes) defamatory statements for the world to see on Facebook" (Pls' Opp'n at 10, ln. 14), but that is not a basis for why Nevada is more convenient. Indeed, the accused posts were made in Florida. Accordingly, if this Court does not grant a dismissal, Carney respectfully requests transfer to the Southern District of Florida for convenience.

### D. Plaintiffs Failed to Specify Which Statements Were Allegedly False, What Made Them False, and Why They Are Not Protected Free Speech

Plaintiffs have failed to allege which statements made by Carney were allegedly "false" or how they were "false," rather than opinion or protected criticism. For instance, Plaintiffs argue in support of their defamation claim that "CARNEY filed a false Complaint with the Commodity Futures Trade Commission on or about the beginning of January 2018" (Am. Compl. at 2, ¶ 13), but fail to state what was the "false" statement or how it is "false." Nevertheless, statements made to the CFTC are not published, and have "absolute privilege," and thus cannot be actionable. *Pope v. Motel 6*, 121 Nev. 307, 315, 114 P.3d 277, 282 (2005) ("[W]e have recognized an absolute privilege for communications published in the course of judicial proceedings, even when the statements are false or malicious and are republished with the intent to harm another. We have also extended an absolute privilege to quasi-judicial proceedings . . ."). Plaintiffs further argue that

Carney committed defamation per se because he stated that "Plaintiffs are running a federally illegal scheme" (Pls' Opp'n at 11, lns. 18-19), but Plaintiffs tellingly failed to allege or attach any such statements by Carney.   While Carney may have opined about his thoughts on IML's longevity, if such statements were actionable, every stock analyst, website or news program would potentially be liable if they opined about the potential future of a company.  *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 777 (1985) ("[T]he First Amendment requires significant protection from defamation law's chill for a range of expression far broader than simply speech about pure political issues."); *SPX Corp. v. Doe*, 253 F. Supp. 2d 974, 981 (N.D. Ohio 2003) (holding that statements posted on an internet message board accusing the plaintiff, a corporation, of accounting fraud, warning readers to "get ready for" an "FBI and SEC probe," and advising readers to sell the plaintiff's stock, were not defamatory under Ohio law, which is similar to Nevada law, and were instead privileged opinion).   Thus, even if taken as true, the statements are protected first amendment criticism, mere opinion and puffery, which is not actionable.

Plaintiffs make the same arguments in support of their trade libel claim as for their defamation claim, and their trade libel fails for the same reasons:  there is no indication which statements or part of statements are allegedly false, and again, all are protected first amendment criticism, opinion and puffery.

Plaintiffs' claims for "Tortious Interference with Contractual Relations" and "Tortious Interference with Prospective Economic Advantage" both lose because Plaintiffs failed to plead that the contracts were disrupted, but even if they were, the statements were not "false" but rather protected first amendment criticism, opinion and puffery, which are privileged statements.  *See SPX Corp.*, 253 F. Supp. 2d at 981 (internet posts accusing a corporation plaintiff of accounting fraud, warning readers to "get ready for" an "FBI and SEC probe," and advising readers to sell the plaintiff's stock were privileged opinion); *Lubin v. Kunin*, 17 P.3d 422, 426 (Nev. 2001). ("Statements of opinion are protected speech under the First Amendment of the United States Constitution[ and] . . . are not actionable at law.").

## CONCLUSION

Because Defendant Scott Carney's activities were not "targeted" or "directed" to Nevada,

Defendant Carney respectfully requests this Court to enter an order dismissing the Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).   Defendant Carney further respectfully requests this Court to dismiss each of Plaintiffs' claims against him under Federal Rule of Civil Procedure 12(b)(6) because they fail to state a claim or allege facts to meet the elements of each cause of action, and because any alleged statements made by him are nevertheless not actionable.  If personal jurisdiction is found proper and the Court does not dismiss, Defendant Carney alternatively respectfully requests that this Court transfer this action from the District of Nevada to the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and in the interests of justice.

Dated:  June 28, 2018

Respectfully submitted,

SCOTT CARNEY,

By: s/   Adam Wolek
Adam Wolek
awolek@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, 28th Floor
Chicago, Illinois  60601
Phone: (312) 836-4063
Fax: (312) 966-8598

DANIEL R. MCNUTT (SBN 7815)
MATTHEW C. WOLF (SBN 10801)
MCNUTT LAW FIRM, P.C.
625 South Eighth Street
Las Vegas, Nevada 89101

*Attorneys for Defendant Scott Carney*

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that pursuant to F.R.C.P. 5 on June 28, 2018, I caused service of the foregoing **DEFENDANT SCOTT CARNEY'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND TO DIMISS FOR FAILURE TO STATE A CLAIM, OR ALTERNATIVELY TO TRANSFER** by mailing a copy via email, or via electronic mail through the United States District Court's CM/ECF system to the following at their last known address or e-mail:

P. Sterling Kerr, Esq. (SBN 3978)
George E. Robinson, Esq. (SBN 9667)
LAW OFFICES OF P. STERLING KERR
3450 St. Rose Parkway, Suite 120
Henderson, Nevada 89074
sterling@sterlingkerrlaw.com
george@sterlingkerrlaw.com
Attorneys for Plaintiffs

*/s/ Adam Wolek*
Adam Wolek