# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| International Markets Live, et al., | Case No.: 2:18-cv-00187-JAD-GWF |
| Plaintiffs | **Order dismissing all claims against Scott Carney for lack of personal jurisdiction and granting leave to amend** |
| v. | |
| Scott Carney, | [ECF Nos. 22, 23] |
| Defendant | |

International Markets Live (IML) and Christopher Terry sue Scott Carney for defamation and tortious interference with contractual relationships and with prospective economic advantage, stemming from statements Carney posted on his own Facebook page.[1] Carney moves to dismiss, arguing that this court lacks personal jurisdiction over him, that venue is not proper in this judicial district, and that plaintiffs have failed to state a claim.[2] Because plaintiffs' allegations do not establish that Carney, a Florida resident, expressly aimed his conduct at Nevada, I cannot conclude that he has sufficient minimum contacts with this state to justify exercising long-arm jurisdiction over him. So, I dismiss plaintiffs' claims against Carney but grant them leave to amend their complaint.

## Background

Carney controls a company called Harmonic Trader, a non-party entity that is involved in trading on the foreign currency ("Forex") markets.[3] IML is a New York corporation that also appears be involved in Forex trading and is somehow associated with Carney. In February 2016,

---

[1] ECF No. 19 (first amended complaint).

[2] ECF Nos. 22–23 (motion and corrected image); Fed. R. Civ. P. 12(b)(2), (3), (6).

[3] ECF No. 19 at 2.

Carney traveled to Las Vegas, Nevada to meet with Terry about Forex trading techniques. Together, they recorded videos on this topic from Terry's Las Vegas residence, but their relationship has since degraded for some unstated reason. Carney emailed Terry at some point, stating that he would "go on the offensive" if Terry didn't pay him $50,000—a statement Terry understood to mean that Carney would allege wrongdoings by IML to federal authorities. It appears that Carney never paid the sum, and Carney filed a complaint against IML with the U.S. Commodity Futures Trading Commission in January 2018.

That same month, Carney posted on his own Facebook page: "IML Federal Investigation in FULL SWING! That's all I cansay [sic]."[4] And over the next several months, Carney posted several more times about IML, referencing this suit against him and accusing IML of infringing on some form of intellectual property that he allegedly owns:

> . . . Harmonic Traitor Update: iMarketsLive has filed a $4million [sic] defamation lawsuit against myself and 3 other individuals. They know that I have a $100 mil ip civil suit in the works! But Chris, BIG MISTAKE! These [sic] deceit that you so easily employ to grow your scheme in the name of my work is over! I am filing both a SLAAP and countersuit, just in time for the big iml Vegas Expo. If you [sic] an iml affiliate, DELETE ME NOW and the REAL Harmonic TRADERS can stay tuned. #HarmonicTakeover #imarketslive #ChrisTerry #harmonictraitors #GetYoPopcorn
>
> . . . Just recd [sic] 2nd complaint from imarketslive - serving me papers twice on their $4million [sic] defamation lawsuit. At this point, it's harassment. If you are in iml, iml group or affiliated or know someone who is, you need to know that your so-called leaders are suing the very guy (ME) who created the work they are copying. If you have any respect for me, my work and most important, YOURSELF, LEAVE IML NOW! Any iml member or rep that sends me a confirmed cancellation of imarketslive membership will get GOLD MEMBERSHIP and SOFTWARE FREE 30-days.

---

[4] *Id.*

2

> . . . #HarmonicTakeover #Dryland #HarmonicKarma #CFTCBitch #30daystilimarketslivetakedown
>
> . . . What's #HarmonicTakeover? The #iml Titanic! Have fun rising in Vegas as you hit the iceberg while I watch from dry land! 30Days [sic].[5]

It appears undisputed that Carney posted these statements from outside of Nevada.[6] Terry and IML subsequently filed suit in this district.

**Discussion**

Because I dismiss the claims against Carney for lack of personal jurisdiction, I address only that portion of his motion. The Fourteenth Amendment's Due Process Clause limits a court's power to bind a nonresident defendant to a judgment in the state in which it sits.[7] "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required," for a court to exercise personal jurisdiction, "the nonresident generally must have 'certain minimum contacts such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[8] "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific

---

[5] *Id*. at 7–8.

[6] *See* ECF No. 23 at 2 (Carney arguing that "none of the alleged conduct in the Amended Complaint took place in Nevada"); ECF No. 25 (plaintiffs countering that "Carney wants this Court to believe that he can sit behind the protection of his computer screen and spread across the internet defamatory statements").

[7] *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Because Nevada's long-arm statute grants courts jurisdiction over persons "on any basis not inconsistent with" the U.S. Constitution, Nev. Rev. Stat. § 14.065, the jurisdictional analyses under state law and federal due process are identical. *Walden*, 571 U.S. at 283.

[8] *Walden*, 571 U.S. at 283 (ellipses omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

jurisdiction."[9] Because plaintiffs concede that Carney is not subject to general jurisdiction in Nevada,[10] I apply only a specific-jurisdiction analysis.

Specific jurisdiction depends on an "activity or an occurrence that takes place in [or is purposely directed at] the forum State and is therefore subject to the State's regulation."[11] "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"[12] Courts in the Ninth Circuit apply a three-prong test to determine whether specific jurisdiction over a defendant exists: "(1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'"[13] Plaintiffs bear the burden of satisfying the first two prongs.[14] In deciding whether this burden is met, I must accept as true the uncontroverted allegations in the plaintiffs' complaint, but a plaintiff cannot rely on "bare allegations" alone.[15] I also may review affidavits or declarations submitted by either side.[16]

---

[9] *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

[10] ECF No. 25 at 2 n.1.

[11] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[12] *Id*. (internal citations and quotations omitted).

[13] *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

[14] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

[15] *Id*. (*quoting Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

[16] *Id*.

4

Turning to the first prong, the terms "purposeful direction" and "purposeful availment" describe two different analyses.[17] Purposeful direction is appropriate for addressing suits involving an intentional tort "where the tort was committed outside the forum state."[18] Because the plaintiffs allege that Carney made tortious statements outside of Nevada that affected them within this state, and because Carney avers he has no property or business interests in Nevada,[19] I apply a purposeful-direction framework. This prong of the specific-jurisdiction analysis involves its own three-part test derived from the U.S. Supreme Court's decision in *Calder v. Jones*.[20] Under *Calder*'s "effects" test, courts ask whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."[21]

The first step is easily satisfied here because Carney is alleged to have committed intentional torts.[22] I therefore address whether this intentional conduct was expressly aimed at Nevada. "The exact form of [this] analysis varies from case to case and 'depends, to a

---

[17] *Id*. at 802.

[18] *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp*., 905 F.3d 597, 605 (9th Cir. 2018).

[19] ECF No. 23-1 (Carney's declaration). Plaintiffs point to one event that occurred within Nevada: Carney recording Forex-related videos with Terry. ECF No. 25 at 2. But because plaintiffs do not allege that these videos were defamatory or caused the toritious interference, the videos are merely part of the factual backdrop to plaintiffs' claims and are not relevant forum-related activity. *See Schwarzenegger*, 374 F.3d at 802 (9th Cir. 2004) ("[T]he claim must be one which arises out of or relates to the defendant's forum-related activities . . . .").

[20] *Axiom Foods*, 874 F.3d at 1069 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

[21] *Id.* (citation omitted).

[22] *See Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) ("The meaning of the term 'intentional act' in our jurisdictional analysis is essentially the same as in the context of intentional torts; namely, the defendant must act with the 'intent to perform an actual, physical act in the real world.'").

significant degree, on the specific type of tort or other wrongful conduct at issue.'"[23] Plaintiffs allege that Carney's above-quoted statements harmed them in two related ways: damaging their reputations and encouraging customers to stop using their services.[24] But based on the allegations made, it is difficult to see how either tort was directed towards Nevada.

In the defamation context, Carney primarily accuses IML, a New York corporation with no alleged Nevada connection, of "copying" his work—making only veiled references to Terry. Carney does not assert that the conduct occurred in Nevada. And because he posted the statements on his own Facebook page outside of Nevada, he had no discernable intent that the statements be read primarily—or to any degree—by a Nevada audience. Nor is there reason to believe that it was likely that his posts were read by anyone in Nevada other than Terry. Likewise, plaintiffs have not asserted that any of the reputational injury they allegedly suffered occurred in Nevada. And the two references Carney made to Las Vegas—one of which alludes to a professional exhibition that IML may have been involved with in Las Vegas—do not mean that he directed his comments towards Nevada—e.g., towards consumers attending the Las Vegas expo. This case is thus starkly different from *Calder*, where the Supreme Court found that a California court properly exerted jurisdiction over two Floridians who had written and edited an allegedly libelous article written about a California actress, using California sources, and

---

[23] *Id*. (quoting Schwarzenegger, 374 F.3d at 807).

[24] *See, e.g.*, ECF No. 19 at 3 ("[Y]ou need to know that your so-called leaders are suing the very guy (ME) who created the work they are copying. If you have any respect for me, my work and most important, YOURSELF, LEAVE IML NOW!"). Carney argues that I should not consider statements he allegedly posted to Facebook several months *after* plaintiffs filed suit in January 2018. ECF No. 26 at 2–3. But he cites to case law involving conduct that occurred after the operative complaint was filed. *See, e.g.*, *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990). By contrast, Carney's posts occured between the original and first amended complaint and form the brunt of plaintiffs' tort claims that are alleged in the latter, operative complaint. It is thus appropriate for me to consider these statements in my jurisdictional analysis.

6

extensively circulated in California, where the "brunt" of the actress's reputational injury was felt.[25]

Plaintiffs' claims for tortious interference with a contractual relationship and with prospective economic advantage appear to stem from Carney allegedly encouraging IML customers to cancel their "imarketslive membership . . . ."[26] Plaintiffs provide no details about what services IML provides, but they appear to be internet-based, and there is no indication in the complaint that IML customers are primarily located in Nevada. Nor have plaintiffs stated how many customers or how much (actual or potential) revenue they believe they lost as a result of Carney's statements and what proportion of these losses they attribute to Nevada. Most importantly, like with the defamation analysis, there is no indication that Carney targeted IML customers in Nevada by, for instance, "tagging" known Nevada customers in his posts or posting directly in Nevada-related Facebook groups, such as the Las Vegas Chamber of Commerce page. Instead, plaintiffs allege that Carney posted the statements on his own page, which could likely be viewed by anyone who followed him, and they have provided no indication that his online following stems predominately from Nevada.

This suit is thus distinguishable from *Mavrix Photo, Inc. v. Brand Technologies, Inc.*,[27] the Ninth Circuit decision upon which plaintiffs primarily rely.[28] There, the court found specific jurisdiction in California over an Ohio-based celebrity-gossip website that allegedly infringed on

---

[25] *See Walden v. Fiore*, 571 U.S. 277, 287 (2014) (quoting *Calder*, 465 U.S. at 788–89); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74 (1984) (holding that "regular circulation of magazines in the forum State is sufficient to support an assertion of jurisdiction in a libel action," as "regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous").

[26] *See* ECF No. 19 at 3.

[27] *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011).

[28] ECF No. 25 at 6.

7

the plaintiff's copyright by posting the plaintiff's celebrity photos on their site.[29] Addressing the expressly aiming analysis, the court acknowledged that its prior decisions "have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed."[30] It ultimately found that the website at issue provided minimum contacts, reasoning that the defendant "'continuously and deliberately exploited' the California market for its website."[31] The defendant, the court reasoned, "makes money by selling advertising space on its website to third-party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to [the defendant]. A substantial number of hits to [the] website came from California residents."[32] And the record revealed that some of these advertisers tailored their ads to California residents, indicting that the defendant knew "—either actually or constructively—about its California user base . . . ."[33] By contrast, there is no indictation here that Carney had any ties to Nevada through his Facebook page. The mere fact that he made allegedly tortious statements on a internationally-accessible website is not, by itself, sufficient to establish personal jurisdiction here.

Nor is it sufficient, as plaintiffs suggest, that Carney knew Terry lives in Nevada.[34] In *Walden v. Fiore*, "the Supreme Court rejected [the] conclusion that the defendants' 'knowledge

---

[29] *Id*. at 1221–22.
[30] *Id*. at 1229.
[31] *Id*. at 1230.
[32] *Id*.
[33] *Id*.
[34] ECF No. 25 at 8.

8

of the *plaintiffs'* "strong forum connections,'" plus the 'foreseeable harm' the plaintiffs suffered in the forum, comprised sufficient minimum contacts."[35] "The Court made clear that [courts] must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum."[36]

Because it appears here that the only connection between the plaintiffs' claims and Nevada is the fact that Carney knew that Terry lived in Las Vegas, I find that their allegations do not establish that Carney expressly aimed his conduct towards this state and that personal jurisdiction over him is therefore lacking. So, I dismiss all claims against Carney without prejudice. And although I doubt that plaintiffs can cure the jurisdictional defects I have identified, I grant them leave to amend their complaint if they can plead facts to do so.

**Conclusion**

IT IS THEREFORE ORDERED that Carney's motion to dismiss for lack of personal jurisdiction **[ECF Nos. 22–23] is GRANTED**. Plaintiffs' claims against Carney are **dismissed without prejudice**, and they may file an amended complaint within **20 days of this order** if they can plead true facts to establish this court's jurisdiction over Carney. Failure to timely file an amended complaint will result in closure of this case.

Dated: January 29, 2019

_____
U.S. District Judge Jennifer A. Dorsey

---

[35] *Axiom Foods*, 874 F.3d at 1069–70 (emphasis added) (brakets omitted) (quoting *Walden*, 571 U.S. at 289).

[36] *Id*. at 1070 (quoting *Walden*, 571 U.S. at 289).

9