P. STERLING KERR, ESQ.
Nevada Bar No. 3978
GEORGE E. ROBINSON, ESQ.
Nevada Bar No. 9667
LAW OFFICES OF P. STERLING KERR
2450 St. Rose Parkway, Suite 120
Henderson, Nevada 89074
Telephone No. (702) 451–2055
Facsimile No. (702) 451-2077
Email: sterling@sterlingkerrlaw.com
Email: george@sterlingkerrlaw.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

INTERNATIONAL MARKETS LIVE, INC., a New York corporation; CHRISTOPHER TERRY, an individual;

Plaintiffs,

v.

SCOTT CARNEY, an individual; ETHAN VANDERBUILT, an individual;

Defendants.

Case No.: 2:18-cv-00187-JAD-GWF

**OPPOSITION TO DEFENDANT SCOTT CARNEY'S MOTION FOR ATTORNEY'S FEES AND COSTS**

COMES NOW Plaintiffs INTERNATIONAL MARKETS LIVE (hereafter "IML") and CHRISTOPHER TERRY (hereafter "Terry"), by and through their attorneys the Law Offices of P. Sterling Kerr, and hereby oppose Defendant SCOTT CARNEY's (hereafter "Carney") Motion for Attorney's Fees and Costs.

/ / /

/ / /

This Opposition is made and based upon all the papers and pleadings on file herein, the Points and Authorities attached hereto, and such oral argument as may be adduced at a hearing of this matter.

DATED this 19th day of April, 2019.

LAW OFFICES OF P. STERLING KERR

By:/s/ George Robinson, Esq.
    P. STERLING KERR, ESQ.
    Nevada Bar No. 3978
    GEORGE ROBINSON, ESQ.
    Nevada Bar No. 9667
    LAW OFFICES OF P. STERLING KERR
    2450 St. Rose Parkway, Suite 120
    Henderson, Nevada 89074
    Telephone No. (702) 451–2055
    Facsimile No. (702) 451-2077
    Email: sterling@sterlingkerrlaw.com
    Email: george@sterlingkerrlaw.com
    *Attorneys for Plaintiff*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Court must deny Carney's Motion for Attorneys' Fees and Costs because Carney has no basis for said Motion. Carney's Motion seeks an unconscionable $61,336.13 for the litigation of two basic motions. Carney's use of both federal case law and Nevada statutory law as a basis for his request for attorneys' fees is the first of many fatal problems with his Motion. Pursuant to well established supreme court precedent, Carney cannot use federal law as a basis for attorneys' fees because only Nevada substantive law applies to the present matter. Furthermore, Carney cannot use NRS 18.010(2)(b) as a basis for his outlandish attorney's fees because no trial has been conducted and no findings of fact have been made regarding the merits of Plaintiffs' claims when such findings are mandated by Nevada law. Moreover, Plaintiffs had

a good faith basis for asserting personal jurisdiction over Carney because he specifically targeted Terry, a Nevada resident, and specifically aimed his slanderous statements so that the harm would be felt in Nevada.

Alternatively, if the Court elects to award attorney's fees, Carney's clearly fabricated and inflated attorney's fees are unreasonable under Nevada law. Carney's attorneys spent over 140 billable hours in the preparation of a motion to dismiss and a motion for attorney's fees. There was no discovery and no evidentiary hearing. Therefore, Plaintiffs respectfully request that the Court deny Carney's Motion in its entirety. Alternatively, if the Court elects to award attorney's fees, Plaintiffs respectfully request that the Court deny or limit Carney's attorney's fees because the exorbitant and inflated attorney's fees are unreasonable.

## II.    STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

The present action stems from Carney's defamatory statements regarding Plaintiffs and Plaintiffs' business practices. In February 2016, Carney traveled to Las Vegas to meet with Terry about Forex trading techniques. *See* Order at pgs. 1-2 [Doc #30]. Together, they recorded videos on this topic from Terry's Las Vegas residence, but their relationship thereafter degraded. *Id.* at p. 2. Carney emailed Terry at some point, stating that he would "go on the offensive" if Terry didn't pay him $50,000 – a statement Terry understood to mean that Carney would allege wrongdoings by IML to federal authorities. *Id.* Shortly after these threats were made, CARNEY posted derogatory statements against Plaintiffs in the comments section of HALTERMAN's Facebook page.

CARNEY filed a false Complaint with the Commodities Futures Trading Commission on or about the beginning of January 2018. On or about January 19, 2018, CARNEY posted: "IML Federal Investigation in FULL SWING! That's all I cansay." On or about March 10, 2018, CARNEY posted:

> Harmonic Traitor Update: iMarketsLive has filed a $4million defamation lawsuit against myself and 3 other individuals. They know that I have a $100 mil ip civil suit in the works! But Chris, BIG MISTAKE! These deceit that you so easily employ to grow your scheme in the name of my work is over! I am filing both a SLAAP and countersuit, just in time for the big iml Vegas Expo. If you an iml affiliate, DELETE ME NOW and the REAL Harmonic TRADERS can stay tuned. #HarmonicTakeover #imarketslive #ChrisTerry #harmonictraitors #GetYoPopcorn

On or about April 4, 2018, CARNEY posted:

> Just recd 2nd complaint from imarketslive - serving me papers twice on their $4million defamation lawsuit. At this point, it's harassment. If you are in iml, iml group or affiliated or know someone who is, you need to know that your so-called leaders are suing the very guy (ME) who created the work they are copying. If you have any respect for me, my work and most important, YOURSELF, LEAVE IML NOW! Any iml member or rep that sends me a confirmed cancellation of imarketslive membership will get GOLD MEMBERSHIP and SOFTWARE FREE 30-days. Send to ht@ht.com #HarmonicTakeover #Dryland #HarmonicKarma #CFTCBitch #30daystilimarketslivetakedown

On or about March 16, 2018, CARNEY posted: "What's #HarmonicTakeover? The #iml Titanic! Have fun rising in Vegas as you hit the iceberg while I watch from dry land! 30Days." On or about March 19, 2018, CARNEY posted: "HTAffiliate Program Starts this week! No fees. No reps req. JUST EARN WITH ME! Comment "#imlTitantic" below for info!" On or about May 22, 2018, CARNEY posted: "#CFTC - Playtime is over! #DRYLAND". On or about May 24, 2018, CARNEY posted "Setting the harmonic pattern record straight next week! Million$ lawsuits, iml smack, programmer crooks&MY TRUTH! It changes now!". On or about April 3, 2018, CARNEY posts, "The OFFICIAL Harmonic Trader Platform for MetaTrader4 (MT4) is coming in 10days!!! #HarmonicTakeover #imlwho? #DryLand."

On February 1, 2018, Plaintiffs commenced the present action. Plaintiffs sought damages for defamation and for injunctive relief to enjoin Carney from committing further defamatory and tortious actions which harmed Plaintiffs' business reputation. On or about May 24, 2018, Plaintiffs filed their First Amended Complaint. *See* First Amended Complaint [Doc #19]. On

June 8, 2018, Carney filed his Motion to Dismiss. *See* Defendant Scott Carney's Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Personal Jurisdiction, Improper Venue, and to Dismiss for Failure to State a Claim or Alternatively to Transfer [Doc #23]. After briefing on the issue, the Court issued its decision granting Carney's Motion for Lack of Personal Jurisdiction. *See* Order Dismissing all Claims Against Scott Carney for Lack of Personal Jurisdiction and Granting Leave to Amend [Doc #30]. In said order, the Court decided that there was no personal jurisdiction over Carney in Nevada, however, the Court specifically declined to rule on the other aspects of Carney's Motion. *Id.* at p. 3. Moreover, the Court reasoned that the any jurisdictional facts could be cured by amendment and thus dismissed Plaintiffs' claims without prejudice and granted leave to amend. *Id.* at p. 9.

On April 8, 2019, Carney filed his Motion for Attorney's Fees and Costs. *See* Defendant Scott Carney's Motion for Attorneys' Fees and Costs [Doc #34]. In his Motion, Carney seeks an attorneys' fees award in an absurd amount of **$61,336.13** alleging that Plaintiffs' Complaint was to "silence Mr. Carney's free speech and prevent Mr. Carney from further telling others that Plaintiff IML was being investigated by the CFTC for commodity violations." *See* Motion for Attorney's Fees at pgs. 1 and 3. Carney is not a whistleblower entitled to some level of protection, but rather is a common competitor seeking protected status to cloak his defamation and tortious conduct. This Opposition now follows.

## III.    LEGAL ARGUMENT

### A.  Legal Standard

#### a.  Nevada Substantive Law Applies

It is a long-recognized principle that federal courts sitting in diversity must apply state substantive law and federal procedural law. *Shady Grove Orthopedic Associates v. Allstate Ins.*, 559 U.S. 393 (2010); *see also* Hanna v. Plumer, 380 U.S. 460, 465 (1965). When state substantive law applies, attorneys' fees are to be awarded in accordance with state law. *Johnson*

*v. Incline Village Gen. Improvement Dist.*, 5 F.Supp. 2d 1113, 1114 (D. Nev. 1998).

### b.  Nevada Standard for Attorney's Fees

In Nevada, it is well settled that attorney's fees are not recoverable absent a statute, rule or contractual provision to the contrary. *Rowland v. Lepire*, 662 P.2d 13321336 (Nev. 1983); *Locken v. Locken*, 98 Nev. 369, 650 P.2d 803 (1982); and *Von Ehrensmann v. Lee*, 98 Nev. 335, 647 P.2d 377 (1982). Nevada's statutory provision regarding attorney's fees in contained in NRS 18 which reads in relevant part:

> 2.  In addition to the cases where an allowance is authorized by specific statute, the court may make an allowance of attorney's fees to a prevailing party:
>
> . . .
>
> (b) Without regard to the recovery sought, when the court finds that the claim, counterclaim, cross-claim or third-party complaint or defense of the opposing party was brought or maintained without reasonable ground or to harass the prevailing party. The court shall liberally construe the provisions of this paragraph in favor of awarding attorney's fees in all appropriate situations. It is the intent of the Legislature that the court award attorney's fees pursuant to this paragraph and impose sanctions pursuant to Rule 11 of the Nevada Rules of Civil Procedure in all appropriate situations to punish for and deter frivolous or vexatious claims and defenses because such claims and defenses overburden limited judicial resources, hinder the timely resolution of meritorious claims and increase the costs of engaging in business and providing professional services to the public.

In assessing a motion for attorney's fees under NRS 18.010(2)(b), the trial court must determine whether the plaintiff had reasonable grounds for its claims. *Bergmann v. Boyce*, 109 Nev. 670 (Nev., 1993). A prevailing party must support its motion for attorney fees by showing evidence in the record supporting the proposition that the complaint was brought without reasonable grounds or to harass the other party. *Semenza v. Caughlin Crafted Homes*, 111 Nev. 1089, 1095 (Nev., 1995).

The Nevada Supreme Court has defined groundless as "the allegations in the complaint

are not supported by any credible evidence at trial." *Allianz Ins. Co. v. Gagnon*, 109 Nev. 990, 995 (Nev., 1993). To support such an award, however, "there must be evidence in the record supporting the proposition that the complaint was brought without reasonable grounds or to harass the other party." *Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 486, 851 P.2d 459, 464 (1993).

**B.  Carney Cannot Seek his Attorney's Fees Under Federal Statute or Case Law.**

Here, Carney cannot seek his exorbitant Attorney's Fees pursuant to federal statute or case law because Nevada substantive law applies. Plaintiffs' action contained state law claims for: 1) defamation per se; 2) trade libel; 3) tortious interference with contractual relations; and 4) tortious interference with prospective economic advantage. *See* First Amended Complaint [Doc #19]. Furthermore, Plaintiffs' complaint relied upon diversity jurisdiction and did not contain any federal question jurisdiction claims. *Id.* In his Motion for Attorney's Fees, Carney seems to rely upon federal case law that this Court has discretion to award attorney's fees against a losing party. *See* Carney's Motion for Attorney's Fees and Costs at p. 5 ("common law allows a court to assess attorney's fees against a losing party that has acted in bad faith, vexatiously, wantonly, or for oppressive reasons"). Pursuant to well established precedent, this Court may only apply Nevada law in considering Carney's request for attorney's fees. Therefore, to the extent that Carney seeks attorney's fees under federal statute or case authority, the Court must deny Carney's Motion for Attorney's Fees and Costs.

**C.  Carney is Not Entitled to His Attorney's Fees Under NRS 18.010(2)(b).**

Carney seeks his ludicrous and inflated attorney's fees in this matter without grounds to do so. Plaintiffs brought the present action in good faith for the defamatory statements made by Carney which were disparaging to Plaintiffs' reputation and business. Plaintiffs had a good faith basis in bringing the action in the present forum because facts exist that would support personal jurisdiction in Nevada. Carney cannot use NRS 18.010(2)(b) as a basis for attorney's fees

because the Court has made no findings of fact in the matter and no trial has been conducted. Carney cannot insist that this Court conduct a post-motion to dismiss fact finding excursion when the Court has ruled that it has no personal jurisdiction over Carney. Therefore, Carney is not entitled to attorney's fees under NRS 18.010(2)(b).

        **a. Plaintiffs' Lawsuit Was Not Baseless Because Plaintiffs Proceeded Under a Reasonable Grounds that this Court has Personal Jurisdiction Over Carney.**

Carney first contends that Plaintiffs' lawsuit was baseless because Carney allegedly has no connection with Nevada. Here, there are personal statements about Terry that attack his personal character and integrity.  Terry is a resident of Nevada which is a fact Carney was aware of because Carney came to visit Terry in Nevada. Furthermore, Carney's online posts target Terry and IML's Vegas Expo in Nevada. Some of Carney's posts are as follows:

> March 10, 2018 Post: "Harmonic Traitor Update: iMarketsLive has filed a $4million defamation lawsuit against myself and 3 other individuals. They know that I have a $100 mil ip civil suit in the works! But **Chris**, BIG MISTAKE! These deceit that you so easily employ to **grow your scheme** in the name of my work is over! I am filing both a SLAAP and countersuit, **just in time for the big iml Vegas Expo**. If you an iml affiliate, DELETE ME NOW and the REAL Harmonic TRADERS can stay tuned. #HarmonicTakeover #imarketslive #ChrisTerry #harmonictraitors #GetYoPopcorn". (emphasis added).

> April 4, 2018 Post: "Just recd 2nd complaint from imarketslive - serving me papers twice on their $4million defamation lawsuit. At this point, it's harassment. If you are in iml, iml group or affiliated or know someone who is, you need to know that your so-called leaders are suing the very guy (ME) who created the work they are copying. If you have any respect for me, my work and most important, YOURSELF, LEAVE IML NOW! Any iml member or rep that sends me a confirmed cancellation of imarketslive membership will get GOLD MEMBERSHIP and SOFTWARE FREE 30-days. Send to ht@ht.com #HarmonicTakeover #Dryland #HarmonicKarma #CFTCBitch #30daystilimarketslivetakedown"

> March 16, 2018 Post: "What's #HarmonicTakeover? The #iml Titanic! Have fun rising in **Vegas** as you hit the iceberg while I watch from dry land! 30Days." (emphasis added).

As set forth above, Carney's defamatory statements specifically target Terry who Carney knew was a resident of Las Vegas, Nevada. Carney also posted allegations that he was going to file a "SLAAP and countersuit, just in time for the big iml Vegas Expo." This post indicates that Carney was intentionally attempting to harm both IML and Terry in anticipation of the Vegas Expo which would be conducted in Las Vegas, Nevada. Carney further directs his comments towards Plaintiff in Vegas when he states that IML will allegedly be sinking in Las Vegas, Nevada while Carney will be watching from dry land. Not only do these posts target Terry who is a Las Vegas resident but indicate that Carney is attempting to harm Plaintiffs business reputation at their Expo which would be conducted in Las Vegas. Thus, it is Plaintiffs' position that this Court has specific jurisdiction over Carney because he purposefully directed his activities in the forum.

Ultimately, after conducting a three-pronged analysis as to whether there was specific jurisdiction over Carney, the Court decided that there were insufficient connections between Plaintiffs' claims and Nevada. Order at p. 9 [Doc #30]. However, the Court intentionally did not dismiss the claims with prejudice inferring that personal jurisdiction would exist in another jurisdiction. *See Id.*

It should be noted that Carney's Motion attempts to argue that Plaintiffs' claims lack any reasonable grounds because they were without basis in fact or law. *See* Carney's Motion at p. 7. In so arguing, Carney fails to properly take into account Nevada's legal standard for attorney's fees under NRS 18.010(2)(b). Groundless means "the allegations in the complaint are not supported by any credible evidence at trial." *Allianz Ins. Co.*, 109 Nev. 990 at 995. The facts Plaintiffs cite above demonstrate that Plaintiffs were proceeding under a good faith basis that there was personal jurisdiction in Nevada. Thus, Carney's contention is meritless that Plaintiffs' claims were without basis in fact or law.

/ / /

**b.  Plaintiffs' Claims Were Not Groundless Under NRS 18.010(2)(b).**

Carney is not entitled to his astronomical attorney's fees under NRS 18.010(2)(b) because Plaintiffs' claims were not frivolous under said statute. Carney erroneously contends that even if jurisdiction were proper, Plaintiffs' claims had no basis in law or fact. Carney's Motion at p. 8. It should be noted Carney's claim, that Plaintiffs' claims were groundless, is itself baseless. The Court specifically and intentionally declined to rule on the merits of Carney's Motion to Dismiss for Failure to State a Claim. *See* Order at p. 3 [Doc #30]. The Court ruled that because it had no personal jurisdiction, it did not need to address the merits. *Id.* Carney now attempts to claim, without any findings in the record or any evidence, that Plaintiff's claims were groundless[1]. As noted above, for an award of attorney's fees under NRS 18.010(2)(b), a claim must be found to be groundless which means "the allegations in the complaint are not supported by any credible evidence at trial." *Allianz Ins. Co.*, 109 Nev. 990 at 995.

Here, the Court has made no findings regarding Carney's Motion to Dismiss for Failure to State a Claim let alone a decision on the merits of this case. The Court made a straightforward ruling on the narrow issue of personal jurisdiction. Carney attempts to conflate this ruling with an actual ruling on the merits. No discovery has been conducted, trial has been conducted, no fact finding has been performed, and no credibility weighed. Indeed, the Court has simply operated within the motion to dismiss standard by taking the allegations in the complaint as true. Carney erroneously seeks to have a trial on the merits of the case when Plaintiffs are unable to call witnesses, offer evidence into the record, or otherwise prosecute their claims. However, if a trial were to be held, it would become readily apparent that Carney's statements were in fact defamatory because the statements he cited in his complaint to the CFTC had nothing to do with

---

[1] It should be noted that Carney has exercised his right to challenge the jurisdiction of this Court over him. In response, the Court has ruled that it has no personal jurisdiction over Carney. However, now Carney seeks for this Court to examine the merits of Plaintiffs' claims and make new findings of fact despite the Court's lack of personal jurisdiction to do so.

the actual reason for the investigation and subsequent settlement. The Court cannot reach the "groundless" issue because no trial has been conducted and no findings of fact have been made. Therefore, because there has been no findings of fact that Plaintiffs' claims were not supported by any credible evidence at trial, the Court cannot even reach the issue of groundless.

### D.  Carney's Attorney's Fees are Not Reasonable under Nevada Law.

Should the Court decide that Plaintiffs' claims are groundless despite any findings or evidence in the record to support such a contention, Carney is not entitled to his outrageous and inflated attorney's fees because his fees are not reasonable. Carney again mistakes the applicable standard for the reasonableness for attorney's fees. In Nevada, the method upon which a reasonable fee is determined is subject to the discretion of the court, which is tempered by reason and fairness. *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 864 (Nev., 2005). Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There the Court explained, the lodestar figure represents the "the number of hours reasonably expended on the litigation" multiplied by "a reasonable hourly rate." *Id*. Although this lodestar amount is presumed to represent an appropriate fee, it may be adjusted upward or downward under certain circumstances. *University of Nevada v. Tarkanian,* 110 Nev. 581, 590, 879 P.2d 1180, 1186 (1994).

While it is within the trial court's discretion to determine the reasonable amount of attorney fees under a statute or rule, in exercising that discretion, the court must analyze the requested amount in light of the factors enumerated in *Brunzell v. Golden Gate National Bank*. *Id.* at 864-65. Under *Brunzell*, when courts determine the appropriate fee to award in civil cases, they must consider the following factors: 1) the quality of the advocate; 2) the character and difficulty of the work performed; 3) the work actually performed by the attorney; and 4) the result obtained. *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 349 (Nev., 1969).

Despite the fact that Carney fails to conduct a proper *Brunzell* analysis as mandated by

Nevada precedent, Carney's bloated attorney's fees are unreasonable under such an analysis. Here, the character and the difficulty of the work performed and the work actually performed by the attorney are relatively simple. The character of the work performed is essentially the litigation of two motions, a motion to dismiss for lack of personal jurisdiction and a motion for attorney's fees. The character and content of the work for a motion to dismiss for lack of personal jurisdiction are fundamental legal concepts commonly taught to first year law students. It should also be noted that this work was not document intensive due to the fact that the motion is that of a motion to dismiss before any discovery has been conducted in the matter. There is no need to review hundreds or thousands of pages of discovery documents that would be required for a motion for summary judgment or other similar motion. It is also highly likely that Carney's attorney's have conducted such research in the past and can draw from forms prepared in the past. The second motion is a motion for attorney's fees. Similar to the motion to dismiss for lack of personal jurisdiction, a motion for attorney's fees is not a relatively difficult motion to prepare. The legal issues are straightforward, and the motion is not document intensive just as the motion to dismiss. Thus, **$61,336.13** in attorney's fees for the litigation two rudimentary motions is by no means reasonable.

The work performed by the attorney is also highly unreasonable. Carney's attorneys spent over **189.40 billable hours** in litigating two basic motions. An analysis of Carney's attorneys' invoices reveals the following: 4.5 billable hours were dedicated to the preparation of a waiver of service and a pro hac vice application; **31.3 billable hours** dedicated to research for the motion to dismiss; **53.9 billable hours** were dedicated to strategizing, preparing, and reviewing the motion to dismiss; **20.8 billable hours** were dedicated to strategizing, preparing, and reviewing reply in support of motion to dismiss; **18.1 billable hours** dedicated to research for the motion for attorney's fees; and **19.8 billable hours** dedicated to preparing, reviewing, and revising motion for attorneys' fees. It should be noted that these numbers do not include

more than 40 billable hours of miscellaneous matters. This number shocks the conscience in its breadth and scope for simply preparing two rudimentary motions. Should the Court be inclined to grant attorney's fees, the Court should deny Carney's attorneys' fees entirely, or alternatively, the Court should limit Carney's attorney's fees to a reasonable amount.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court deny CARNEY's Motion to Dismiss in its entirety as it is without merit. Alternatively, if the Court is inclined to grant attorney's fees in this matter despite the lack of any findings that would support a "groundless" conclusion, Plaintiffs respectfully request that Carney's attorney's fees be denied entirely or limited because said fees are unreasonable.

DATED this 19th day of April, 2019.

LAW OFFICES OF P. STERLING KERR

By:/s/ George Robinson, Esq.
P. STERLING KERR, ESQ.
Nevada Bar No. 3978
GEORGE ROBINSON, ESQ.
Nevada Bar No. 9667
LAW OFFICES OF P. STERLING KERR
2450 St. Rose Parkway, Suite 120
Henderson, Nevada 89074
Telephone No. (702) 451–2055
Facsimile No. (702) 451-2077
Email: sterling@sterlingkerrlaw.com
Email: george@sterlingkerrlaw.com
*Attorneys for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on April 19, 2019, a true and correct copy of **OPPOSITION TO DEFENDANT SCOTT CARNEY'S MOTION FOR ATTORNEY'S FEES AND COSTS** was served to the following at their last known address(es), facsimile numbers and/or e-mail/other electronic means, pursuant to:

___X___ **BY E-MAIL AND/OR ELECTRONIC MEANS**:  addressees (s) having consented to electronic service, I via e-mail, Electronic Service through the Court's electronic filing system, or other electronic means to the e-mail address(es) of the addressee(s).

Adam Wolek
Taft Stettinius & Hollister
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601
awolek@taftlaw.com

Daniel McNutt
McNutt Law Firm
625 South 8th St.
Las Vegas, NV 89101
drm@mcnuttlawfirm.com

/s/ Lisa Peters
_____
An employee of the LAW OFFICES OF
P. STERLING KERR